Mr. Justice STORY
 

 delivered the opinion of the court.
 

 This is the case of an application on behalf of the City Bank of New Orleans to this court for a prohibition to be issued to. the District Court of the United States for the district of Louisiana, to prohibit it from further proceedings in a certain case in bankruptcy pending in the said court upon the petition of William Chrilsty, as-’ signee of Daniel T. Walden, a bankrupt, The suggestions for the writ state at large the whole proeeedings before the District Court, and contain allegations of some other facts, which, either do- hot appear at all upon the face of those proceedings, or qualify or contradict some of the statements contained therein. So far as respects thes.e allegations of facts, not so found in the proceedings of the District Court, we are not upon the present occasion at liberty to entertain any consideration thereof for the purpose of .examination or decision, as it would be an exercise of original jurisdiction on the part of .this court''not confided- to us by law. The application for the prohibition is made upon the ground that the District Court has. transcended its' jurisdiction in entertaining those proceedings; and whether it has ox not must depend, hot upon facts stated dehors-the record, but upon those stated in the record, upon which the District Court was called to act, and by which alone it could regulate'its judgment,' Other matters, whether going to oust the jurisdiction of the- court, or to establish the want of - merits in. the case of the plaintiff, constitute properly'a defence to- the suit, to be propounded for the consideration of the District Court by suitable pleadings, supported by suit
 
 *309
 
 able proofs, and cannot be. admitted here to displace the right of the .District Court to', entertain the suit.
 

 . Let üs then .see what is the nature of the case originally presented "to the District Court. It is. founded^ upon a petition of William .Christy, as assignee'of-Daniel-T, Waídén, a bankrupt, in which he states, .that the bankrupt, at the time of his filing his schedule of - . property and surrendering it to his- creditors-, was in possession of a large amount of real estate, described-in the petition, situate in the city of New Orleans, which was to be. administered and disposed of in bankruptcy; the bankrupt having applied to the court for the benefit of-the Bankrupt'Act. It further states, that the City Bank .of..New Orleans, claiming to be a creditor of-the bankrupt and to have a mortgage on the aforesaid property, the said, corporation being a schedule creditor, being- a -party to the: proceedings in' bankruptcy, a^d .being fully aware of the pendency of . thé same proceedings, did proceed, to. the seizure of the said property, and did ', prosecute the said seizure;-to a-sale of the .same property; the same1 being ,put up and offered for ¿alé at public auction'by the sheriff of the state District. Court, on or about the 27th .of June, 1842;’ and it was. by the said sheriff declared to.be struck off to the-said City-Bank, notwithstanding the’ remonstrances of the said assignee, and .his demands to have the same delivered up -to him.'for the benefit ' of all the creditors of the bankrupt. " It further-avers, that foe-same property was illegally offered for sale, and that-it is itself a-nullity, and conferred ho title on. the said City Bank; that the sale was a fraud upon the Bankrupt Actthat" the City Bank attempted thereby ■ to obtain an illegal preference and priority over-the other creditors-of the bankrupt-, and that foe/property was sold at two-foirds only-of its estimated value; that the City Bank- had never delegated.to. ' any person foeauthority to bid off foe same to the said bank at the ■ sale; and that foe-previous formalities required by law for foe sal© were not, complied with, and .that foe property had been illegally advertised and appraised. It further avers, that foe bankrupt,, long prior to his.bankruptcy, was contesting=foe debt claimed by foe said bank; and contending that the said deht was not owing by him, and foe said .property was-not bound thereby. It- further avers, that the said debt is void for usury on foe part of the said bank in making foe loan, foe same not having.been made in money, but that it was.received as .at par in bonds Of the Municipality No. 2, which were then at depreciation? at from twenty to twenty-five per cent., at foéir’'real current market value; afid that the said bank had no authority to make foe said contract or to accept or execute foe mortgage, given by'the bankrupt,.and that foe'contract and mortgage are , utterly void, and should be -so decreed by the court.
 

 The prayer of foe petition is, that foe sheriff’s adjudication of foe said property may be declared null and' void, and that foe said properly may be adjudged to form part of foe bankruptcy and given up
 
 *310
 
 to the petitioner to be by him administered and disposed of in the said bankruptcy and according to law; that the .said debt and. mortgage may be decreed to be null and void,' and the estate of the said bankrupt-discharged from the payment thereof; and that-if the said adjudication shall be held valid, and the debt and mortgage main.tained by the court, then that the amount of the said adjudication may be ordered to be paid over by the said bank to the petitioner, to be accounted for and distributed by him according to law in the course of the settlement of the bankrupt’s estate-, and for all general and equitable relief in the premises.
 

 To this petition the bank, by way of answer, pleaded various pleas — (1) That’ the District Court had no jurisdiction to decide upon thé premises in'the petition; (2) That the subject had already become,
 
 res judicata
 
 in two suits of D. T. Walden
 
 v.
 
 The City Bank, and The City Bank
 
 v.
 
 D. T. Walden, in the state courts, and by the District Court'upon the -petition »of D. T. Walden for an injunction, (riot stating the nature1 or subject-matters of such suits, so as to ascertain the. exact matters therein in controversy;) (3)* That the petition contained inconsistent, demands, viz.: that thé sale be set aside, and that the proceeds of the sale be decreed, to the petitioner; and (4) That the mortgages to the bank were valid upon adequate considerations; that the order of seizure and sale were duly granted, and the sale duly made with all legal formalities, and the property adjudicated to the bank; that the price of- the adjudication was retained by the bank tb satisfy the said mortgages, and that the bank became and were the lawful owners of the properly. The pleas concluded with a denial of all the allegations in the petition, and prayed that the issues in fact inyolved in the petition be tried by a jury*. It is -unnecessary for us to consider whether such a mode of leading is allowable in any proceedings, in equity,.whether they are mmary or plenary.
 

 Upon this state of the pleadings the petitioner took exceptions to the answer of the bank, and three questions were adjourne'd into the Circuit Court for its decision. To these questions the Circuit Court returned the following answers. (See them quoted in the statement of the Reporter.)
 

 Subsequently the assignee filed a supplemental or amended petition in the District Court; stating the matters contained in .the original petition more fully and at large,'with: more precise averments, arid mainly relying thereon ; and alleging, among other things,' that the City Bank became á party to the proceedings in bankruptcy; and by a subsequent amendment or supplemental allegation the assignee averred, that the bank became a party to the proceedings in bank- ' ruptcy, first, by operation of law, the bank being at the time of the bankruptcy mortgage creditors, of th.e bankrupt and1 named in his ' schedule; secondly, by their own act, having filed a petition in the court, in September, 1842, praying that the demand of the assignee
 
 *311
 
 for the postponement of the sale of certain property be disregarded, that their privileges be recognised, and that the property be sold under an order of the court for cash; and that the court had since refused leave to the bank to withdraw and discontinue the latter application and petition.
 

 ■ To the supplemental and amended petition the bank put in an answer or plea, denying the jurisdiction of the District Court to take cognisance thereof, and insisting that they had never proved their debt in bankruptcy, but had prosecuted their remedy in the state courts against the mortgaged property, relying upon their mortgage as a lien wholly exempted from the operation of the bankruptcy by the express-terms of the Bankrupt Act; that the District Court, sitting as a bankrupt court, and holding summary jurisdiction in matr ters of bankruptcy under the act of Congress, ought not to take cog-nisance of the petition and supplemental petition, inasmuch as all jurisdiction ovér the premises is by law vested in and of right belongs to the Circuit Court.of the United States for the eastern district of Louisiana, holding jurisdiction in equity, and proceeding accord-, ing to the forms and principle's of chancery as prescribed by law, or to the District Court of the United States, proceeding in the same manner, and vested with concurrent jurisdiction over all suits at law or. in equity brought by an assigned against any person claiming an adverse interest, which courts are competent to entertain the suit of the petitioner and grant him the relief prayed for, if by law entitled to the samé, and not this court; and the bank, therefore, práyed the said petition and supplemental petition to be dismissed for want of jurisdiction.
 

 The District Court affirmed its jurisdiction, considering that the matters of the plea had been already deterriiined by the decree of the Circuit Court already referred to, and overruled the plea, and ordered'the bank to answer'to the m'erits of the cause.
 

 It is at this stage of the proceedings, so far as the record before us enables us to • see, that the motion for the prohibition has been brought before this court for consideration and decision. Upon the argument the principal questions which have been discussed are, first, what is the true nature and extent of the jurisdiction of the District Court sitting in bankruptcy ? secondly, whether if the District Court has. exceeded its jurisdiction in the present case, a w.rit of prohibition lies from this court to that court to stay farther proceedings ? Each of these questions is of great importance, and the first in an especial manner having given rise to some diversity of opinion in the different circuits, and lying at the foundation- of all the proceedings in bankruptcy, is essential to be decided in order to a safe and just administration of justice under the Bankrupt Act.
 

 In the first place, then, as to the jurisdiction of the District Court in matters of bankruptcy. Independent, of the Bankrupt Act of 1841, chap. 9, the District Courts of the United States possess no
 
 *312
 
 equity jurisdiction whatsoever; for the previous legislation of Congress conferred no such' authority upon them.. Whatever jurisdiction, therefore,- they now possess is who.Ily derived from that act; Add, as we shall presently see, the jurisdiction thus conferred is to be~exercised by that court summarily in the nature of summary proceed* ings in equity.
 

 The. obvious design, of the Bankrupt Act of 1841, chap. 9, was to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a'limited period. For this purpose it was indispensable that ah entire system adequate to that .end' should be provided by Congress, capable of being- worked' oút through the instrumentality of its -own courts,-jndepenclently of all aid and- assistance from any other tribunals over which, it could exercise" no effectual control. The 10th section of the act declares, -that in order to ensure a spee'dy settlement-and close of-the. pro-' ceedirigs in each case, in bankruptcy, it shall be the duty of the court to order and direct a collection of the assets, and a reduction of the same to money, and a distribution thereof at as early periods as practicable, consistently with a due regard to the interests of tike. creditors, and that such distribution of. the assets, so far as can be done consistently with the rights of third persons having adverse claims thereto, shall be made as often as once in six months; and that all the proceedings in bankruptcy in each case, if. practicable, shall be finally adjusted, settled, and brought to a close by the court, within two years after the decree declaring the bankruptcy. By another section of the act, (§ 3,.) the assignee is vested with all -the' rights, titles, powers, and authorities, to sell, manage, .and dispose of the estate and property of the bankrupt,' of every .name and ■nature, and to sue for and defend the same, subject to the orders and direction's of the court, as ftilly as the bankrupt might before his; bankruptcy. • ■ By another section, (§ 9,) all sales, transfers, and other conveyances of the bankrupt’s property,'and. rights of property, me required to be made by the assignee at such times and in such ‘ manner as shall be ordered and .appointed by the court in bankruptcy. By another section, (§ 11',) the assignee is clothed with full authority, by and under the order and direction of the proper court in bankruptcy, to redeem and discharge any mortgage,, or other pledge, or deposit, or lien upon any property, real or personal, and to tender a due performance thereof, and to compound any debts or other claims or securities due or belonging -to the éstate of the bankrupt.
 

 From this brief review of these enactments it is manifest that the purposes so essential to the, just operation of the bankrupt syStem, could scarcely be accomplished except by clothing the courts of the United States sitting in bankruptcy with the most ample powers and jurisdiction to accomplish them; and .it would be a. matter . of extreme surprise if, when Congress had thus required the end,
 
 *313
 
 théy should at the same - time hare withheld the means by which, alone it could be successfully reached. Accordingly we find that by tire 6th section of the act it is expressly provided,
 
 “
 
 that the District Court in every district shall have jurisdiction in all matters and proceédings in bankruptcy arising under this act, and any other act which may hereafter be passed on the subject of bankruptcy, the said jurisdiction to be exercised summarily in the nature of summary proceedings in equity; and for this purpose the said District ■ Court shall be' deemed always open. And the district judge may adjourn any point or question arising in any case in -bankruptcy into •the Circuit Court for the district, in his discretion, to be there heard and determined; and for this purpose the Circuit Court of such district shall also be deemed always open.” If the section had stopped here, there could have been no reasonable ground to doubt that it reached all cases where the rights, claims, and property of the bankrupt, or those of his assignee, are concerned, since they are matters arising under the,act, and are necessarily involved in the due administration and settlement of the bankrupt’s estate. In this respect the-language of the act seems to have been-borrowed from’the language of the Constitution, in which the judicial power is declared to extend to cases arising under the Constitution, laws, or treaties of the United States. But the'section does not stop here, but in order to avoid all doubt it goes on to enumerate certain specific classes of cases to which the jurisdiction shall be deemed to extend, not by way of limitation, but in explanation and illustration of the generality of the preceding language. The section further declares:'. “And the jurisdiction hereby conferred on the District Court shall extend to .all cases and controversies in bankruptcy arising between the bankrupt and-any creditor or creditors, who . shall claim any debt. or demand under the bankruptcy; to all cases ,and controversies between such creditor or creditors and the assignee of the estate, whether in office or removed; and to all acts, matters, and things, to be done under and in virtue of the bankruptcy until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy.” This last clause is manifestly added in order to prevent the force of any argument that the specific enumeration of the particular classes, of cases ought to he construed as excluding all. others not enumerated, upon the known maxim, often incorrectly applied,
 
 expressio unius est exclusio alterius.
 
 The 8fh section of the act further illustrates this subject. It is there provided, “ that the Circuit Court within and for the district where the decree of bankruptcy is passed, shall have concurrent j u isdiction with the District Co irt of the same district, of all suits at law and in equity which Ina^ and shall be brought by any assignee óf the bankrupt against any person c - per-ons claiming an adverse inte est,. or by such person against such assignee touching any propert.' or ' transferrable to or vested in such
 
 *314
 
 assignee?’ Now, this clause certainly supposes either that the District Court, in virtue of the 6th section above cited, is already in full possession of the jurisdiction, in the class of cases here mentioned, at least so far as they are of an equitable nature, and then confers the like concurrent jurisdiction on the Circuit Court, or it intends to confer on both courts a coextensive authority over that very class of cases, and thereby demonstrates that Congress did not intend.to limit the jurisdiction of the District Court to the classes of cases specifically enumerated in the 6th section, but to bring within its reach■ all adverse, claims. Of course, in whichever court such adverse suit shpuld be first brought, that would give such court full jurisdiction thereof, to the exclusion of the other, but in no shape whatsoever can this clause be construed otherwise to abridge the exclusive jurisdiction of the District Court over all .other “ matters and proceedings in bankruptcy arising under the act,” or-over “ all acts, and matters and things to be done under and in virtue of the bankruptcy.”
 

 One ground urged in the declinatory plea of the bank to the supplemental petition, and also in the argument here, is, that the District Court would have had jurisdiction in equity over the present case, if the suit had been by a formal bill and other plenary proceedings according to the common course of such suits in the Circuit Court, but that ■ it has no right to sustain the suit in its present form of a'summary proceeding in equity. Now, without stopping to consider whether the petition- of the assignee in the present case is not in substance, and for all useful purposes, a bill in equity, it is clear that the suggestion has- no -foundation whatsoever in the language or objects of the 6th or 8th Sections of the Bankrupt Act. There is no provision in the former section authorizing or requiring the District Court to proceed in equity otherwise than “ summarily in the nature of summary proceedings in equity ;” and that court is by the same section clothed with full power and authority, and indeed it is made its duty, “ from -time to time to prescribe suitable rules, and regulations; and forms of proceedings, in all matters in bankruptcy,” subject-to the revision of the Circuit Court; and it is added: “ And in all such rules, and regulations, and forms, it shall be the duty of the said courts to make them as simple and brief as practicable, to the end to avoid all unnecessary expenses, and to facilitate the use thereof by “ the public at large.” If any infer- ■ ence is to he drawn from this language, it is, not that the District Court should in any case proceed by plenary proceedings in equity in cases of bankruptcy, but that the Circuit Court should, by the interposition of its revising power, aid in the suppression of any such plenary proceedings if they should be attempted therein. The manifest object of the act was to provide speedy proceedings, and the ascertainment and adjustment of all claims and rights in favour of or against the bankrupt’s estate, in the most expeditious manner,.
 
 *315
 
 consistent with justice and equity, without being retarded or obstructed by formal proceedings, according to the general course of equity practice, which had nothing to do with the merits.
 

 Another ground of objection insisted on in the argument is, that the language of the 6th 'section, where it refers to
 
 “
 
 any creditor, or creditors, who shall claim any debt or demand under the bankruptcy,” is exclusively limited to such creditors as come in and prove their debts under the bankruptcy, and does' not apply to creditors who claim adversely thereto. If this argument were well founded, it would be sufficient to say, that the case would then fall within the concurrent jurisdiction given by the 8th section already cited, and therefore not.avail for the City Bank. But we do not so interpret the language. When creditors are spoken of “ who claim a debt or demand under the bankruptcy}” we understand the meaning to be that they are creditors of the bankrupt, and that their debts constitute present subsisting claims upon the bankrupt’s estate, un-extinguished in fact or in law, and capable of being asserted under the bankruptcy in any manner and form which the- creditors might elect, whether' they have a security by way of pledge- or mortgage therefor or not. If they have a pledge or mortgage therefor, they may apply to the court to have the same sold, and the proceeds thereof applied towards the payment of their debts
 
 pro
 
 tanto, and to prove for the residue;, or, on the other hand, thfe assignee may contest .their claims in the court, or.seek to ascertain the true amount thereof, and have the residue of the property, after satisfying their claims, applied for the benefit of the other creditors. Still, the debts oi demands are in' either view-debts or demands under the bankruptcy, and they are required by the Bankrupt Act to be included by the. bankrupt in the list of 'the debts due to his. creditors when he applies for the benefit of the act; so that there is nothing in the language or intent of the 6th Section to justify the conclusion which the argument seeks to arrive at. The 5th section of the Bankrupt Act is- framed
 
 diverso intuitu.
 
 It does not speak of creditors who shall claim any debt or demand under the bankruptcy, but it uses other qualifying language. The words are: “All creditors coming in and proving their debts under such bankruptcy in ■fhe'manner hereinafter prescribed, the same being
 
 bona fide
 
 debts, shall be entitled to share in the. bankrupt’s property and effects
 
 pro
 
 rata, &c.; and no creditor or other person coming in or proving his debt or other claim, shall be allowed, to maintain any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt.”- But this provision by no means interferes with the -right of any creditor to proceed against the assignee under the bankruptcy to have the benefit of any mortgage, pledge, or other .security,
 
 pro tanto
 
 for his debt, if he elects so to do, or with the rights of the assignee to redeem the
 
 *316
 
 same, or otherwise to contest the validity of the debt or security under the bankruptcy.
 

 ' It is also suggested that the proviso of the 2d section of the act declares, “ That nothing in this act shall be' construed to annul, destroy, or impair any lawful rights of married women or'minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the states respectively, and which may not be inconsistent with the provisions of the 2d' and 5th sections of this actand that- thereby such liens, mortgages, and other securities are'saved from the operation of the Bankrupt Act, and by inference from the jurisdiction of the District Court. • But we are óf opinion that the inference thus attempted to be drawn, is not justified by the premises. There is., no doubt that the liens, mortgages, and other securities within the purview of this proviso, so far as they are valid by the state laws, are not to be annulled, destroyed, dr impaired under the proceedings in bankruptcy; but they are to be held of equal obligation and validity in the courts of the United States as they would be. in the state courts. The District Court, sitting in bankruptcy, is bound to respect and protect them. But- .tins does not and cannot interfere with the jurisdiction and right of the District C ourt to inquire into and ascertain the validity and extent of such liens, mortgages, and. other securities, and to grant the same remedial justice and relief to all the parties interested therein as the state courts might or ought to grant. If the argument has any force, it would go equally to establish, that, no court of the United States, neither the Circuit Court, nor the District-Court, could entertain any jurisdiction over any such cases, but that they exclusively belong to the jurisdiction of the state courts. Such a conclusion would be at war with the whole theory and prac-ticó under the'judicial power given by the Constitution-and laws of the United States. The rights and the remedies'-in such cases are entirely distinct. While the former are to be fully recognised in all courts, the latter belong to the
 
 lex fori,
 
 and are within the competency of tfie. national courts equally with the state courts.
 

 Let us sift this argument a little more in detail. The 8th section of the Bankrupt Act.(as we have already seen) confers on the Circuit-Court concurrent jurisdiction with the District Court of all suits at law and in equity brought by the assignée against any persoji claiming an adverse interest, and .e
 
 converso
 
 by such person against the assignee. Now, the - argument at the bar.supposes, that a creditor having any lien, mortgage, or-other security, falls within, the category here described as having an adverse interest. Assuming this to be true, (on which we give no opinion; and the clause certainly do.es' include persons claiming by titles paramount and not ■under the bankrupt,) still it must be admitted that, under the 8th section, a bill in equity may be brought by or against such creditor in the Circuit Court to redeem or foreclose, or to enforce, or to-set
 
 *317
 
 aside such a lien, mortgage, or other security? If it can be, then the lien, mortgage, or other security, is not saved from- the cogni- • sanee of .the Circuit Court having jurisdiction in bankruptcy, but the most ample remedies lie there; and although the rights of such creditors are to be protected, they are subject to the entire examination and. decision of the court as much as they would be, if brought before the court in the exercise. of its ordinary jurisdiction. If, then, the jurisdiction over such liens, inortgages,- and securities exists in the Circuit Court, it follows from the very words of* the Bankrupt Act, that the District'Court has a concurrent jurisdiction to the same extent and with the same powers.
 

 But it is objected, that the. jurisdiction of the District Court is- • summary in equity and without appeal to any higher court. This, we readily admits But.this was a matter for the consideration of Congress in framing the act. Congress possess the sole right to say - what shall be.the forms of proceedings; either in equity or at law, in the courts of . the United States ; • and in what casés an appeal shall' be allowed or not.. It’ is a matter of sound discretion, and tó be exercised by.Congress.in such a manner as shall in their judgment best promote the public convenience and the- true interests of the citizens.*' Because the proceedings are to be in the nature of summary proceedings in equity, it by ho means follows, that they are not entirely consistent with the principles of justice'and-adapted to promote the interest as well as the convenience of all suitors. Because there is no appeal given,'it by no means follows, that the jurisdiction is either oppressive or dangerous. No appeal lies from the judgments either of the District or Circuit Court in criminal cases; and yet within the cognisance of one" or both of those- courts are all crimes and offences against the United States, from those which are capital down to the lowest misdemeanors, affecting the liberty and-the .property of the citizens. And yet there can be no doubt that this denial of appellate jurisdiction is-founded in a wise protective public policy. The same reasoning would apply to the appellate jurisdiction from the decrees and judgments of the Circuit’ Court, which are limited to cases above $2000,'and cases below that sum embrace a large proportion of the business of that court.
 

 But, in -the present instance, the public policy of Confiding’the whole jurisdiction to the District Court without appeal in ordinary cases requires no- elaborate argument for its vindication. The district judges are presumed to be entirely competent to all the duties imposed upon them by the Bankrupt Act. In cases of doubt- or difficulty, the-, judges have full authority given to them to adjourn • any questions Into the Circuit Court for a final decision.. That very course was adopted in the present case. In the next place, in one class of cases, that ’of adverse interests between the assignee and third- persons, either party is at liberty to institute original proceedings in the Circuit Court, -if a prior suit -has not been brought there
 
 *318
 
 for, in the District Court. So that here the act has afforded effectual means to have the aid and assistance of the judge of the Circuit Court, wherever it may seem to be either expedient or necessary to resolve any questions of importance or difficulty, and it has also secured to parties having an adverse interest a right at their election to proceed in the District or the Cifcuit Court for any remedial justice which their case may require. On the other hand, the avowed policy of'the Bankrupt Act, that of ensuring a speedy administration and distribution of the bankrupt’s effects, would (as has been already suggested) be greatly retarded, if not utterly defeated by the delays necessarily incident to regular and plenary proceedings in equity in the District Court, or by allowing appeals from the District Court to the Circuit Court in all matters-arising under the Bankruptcy.
 

 It is farther objected that, if the jurisdiction of the District Court is as broad and comprehensive as the terms of tire act justify according to the interpretation here insisted on, it operates or may operate to suspend or control all proceedings in the state courts either then pending or thereafter to be brought by: any creditor or person having any adverse interest. to enforce his rights or obtain remedial redress against the bankrupt or his assets after the bankruptcy. We .entertain no doubt that, under the provisions of the 6th section of the act, the District Court does possess full jurisdiction to suspend or control such proceedings in the state courts, not by acting on the courts, over which- it possesses no authority ;■ but by acting .on the parties through the instrumentality of an injunction'or-other remedial proceedings-in equity upon due application made by the assignee and a proper case being laid before the court requiring such interference. Such a course , is very familiar in courts of chancery, ini cases where-a creditors’ bill is filed for the. administration of the •estate qf a deceased person, and. it becomes necessary or.proper to take the whole assets into the hands of the courts for the purpose of collecting-and marshalling the assets, ascertaining and' adjusting conflicting priorities and claims, and accomplishing, á due and equitable distribution among all the parties in interest in the estate. Similar proceedings have been instituted in England in cases of bankruptcy ;. and they were writhout doubt in the contemplation' of Congress as indispensable to the practical working of the bankrupt system. But because the District Court does possess such a jurisdiction under the act, there is nothing in the act which requires that it should in -all cases be absolutely exercised. On the contrary,where suits are pending in the state courts, and there is nothing in them which requires the equitable interference of the District Court to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, the parties may well be permitted to proceed in such suits and consummate them by-proper decrees and judgments, especially where there is no suggestion of any fraud or injustice on the part of the plaintiffs in those
 
 *319
 
 suits. The act itself contemplates-that such suits may be prosecuted and further proceedings had in the state courts; for the assignee is by the 3d section authorized to sue for and defend the property vested in. him under the bankruptcy, “subject to the orders and directions of the District Court,” “ and all suits at law and in equity then pending in which such bankrupt is a party, may be prosecuted and defended by such assignee to its final conclusion in the same way and manner and with the same effect as they might have been by the bankrupt.” So that here the prosecution or defence of any such suits in the state courts is obviously intended to be placed under the discretionary authority of the District Court. And in point of fact, as we all know, very few, comparatively speaking, of the numerous suits pending in the state courts at the time of the bankruptcy ever have been interfered with, and never, unless some equity intervened which required the interposition of the District Court to sustain or protect it. .
 

 It would be easy to put cases in which the exercise of this authority may be indispensable on the part of the District Court, to.prevent irreparable injury, or loss, or waste, of the assets, without adverting to the ca.se at bar, where, upon the allegations in the petition and supplemental petition, tlm creditors of the bankrupt are attempting to enforce a mortgage asserted to be illegal and invalid, and to procure a forced sale of the property by the sheriff, in an illegal and irregular manner, thereby sacrificing the interest of the other creditors under the bankruptcy. Let us put the case of numerous suits pending, or to be brought in the- state courts, upon different mortgages, by the mortgagees, upon various tracts of land and other property, some of tire mortgages being upon the whole of the tracts of land or other property; some-upon apart only thereof; some of them involving a-conflict of independent titles; some of them involving questions as to the extinguishment, or satisfaction, or validity, of the debts; and some of them involving very doubtful questions as to the construction of the terms and extent of the. conveyances. If all such suits may be brought by the separate mortgagees, in the ,different state tribunals, and the mortgagees cannot be compelled to join in, or to be mhde parties defendant to one single-bill, (as is certainly the case in those states where general equity jurisdiction is not given to the state courts,) it is most obvious that, as each of- the state tribunals may or must proceed upon the single case' only before it, the most conflicting decisions may be made, and gross and irreparable injustice may be done to the other mortgagees, as well as to tfie-gene-ral creditors under the-bankruptcy. • All this, however, is completely avoided, by bringing the whole matters in controversy between all the mortgagees before the District or Circuit Court, making them all parties to the summary proceedings in equity, and thus enabling the court to marshal the rights, and priorities, and claims, of all the parties, and by a sale and other proper proceedings, after satisfying
 
 *320
 
 the just claims of all the mortgagees, applying the residue of the assets, if any, for the benefit of the general creditors. Similar considerations would apply to other liens and securities, held by different parties in the same property, or furnishing ground's of conflict and controversy as to their respective rights ¡arid claims;
 

 . Besides, how is the bankrupt court or the assignee, in a.great variety of cases of liens, mortgages, and other securities, to ascertain the just and full amount thereof- after the deduction of all payments and' equitable set-offs, unless it can entertain a suit in equity, for á discovery of the debts, and payments, and .set-offs, and grant suitable relief, in the. premises ? The bankrupt is riot, in his schedule, bound 'to specify them; and if he did-,
 
 non constat
 
 that the other parties would.admit their correctness, or that the general creditors would admit their validity and amount. The 11th section of the act gives the assignee full .power and authority,-by and under the order and direction of the, proper court in bankruptcy, to redeem and discharge any mortgage or other pledge, or deposit, or lien, upon any property, and to-tender a due performance of the conditions thereof. .But how can this be effectually done, unless the-banknipt court and assignee can, by proceedings in that very court, ascertain what is the amount of such mortgage, or pledgé, or deposit, or lien, and what,acts are to be. done as a performance of the mortgage-, or pledge, or deposit, through the instrumentality of a suit in the nature of a summary proceeding in equity for a discovery and relief? 'If we are told that resort may.be had to the state courts .for redress,.one answer is, that in some of the states no' adequaté jurisdiction exists in the state courts, since they are not clothed with general jurisdiction in equity. But a stronger and more conclusive answer'is, that Congress did ,not intend to trust the working of the bankrupt system solely to the- state courts of twenty-six states, which-were independent of any control by the general government, and were under no obligations to carry the system into effect. The judicial power of’the United States is, by the Constitution, competent to' all such purposes; and Congress, by the act, intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do.
 

 Let -us look at another provision of the act already referred to, which. declares, “that in order to insure a speedy settlement and close of the proceedings in each case in bankruptcy, it shall be the duty of the court to order and direct a collection of the assets,- and a reduction of the same to money, and a distribution thereof, at as ■early periods as practicable.” Now here again, it may be repeated, that the end is required, and can it be doubted that adequate means to accomplish the end are intended to be given ? Construing the language of the 6th section as we construe it, adequate means are given; construing it the other way, and it excludes the jurisdiction, if not of the whole subject, at least of the most important parts of
 
 *321
 
 the system} and they are left solely to the cognisance of the tribunals of twenty-six different states, no one of which is bound
 
 by-the
 
 acts of the others, or is under .the control of the national courts. If it be admitted, (what cannot well be denied,) that the District Court may order a sale , of the property of the bankrupt, under this section, how can that sale be made safe to the purchasers, until all claims thereon have been ascertained and adjusted ?■ How can any distribution of the assets be made, until all such "claims are definitively liquidated? How can the proceedings be brought to a close at all, far less within the two years, unless all parties claiming an interest, adverse or' otherwise, can be brought before the bankrupt court, to assert and maintain them ? Besides, independently of the delays which must necessarily be incident to a resort to state tribunals to adjust the matters and rights affected by or arising in bankruptcy, considering the vast numbei-af cases pending in those courts, in-the due administration of their own' jurisprudence-had laws, there could hardly fail to be a conflict in the decisions, as to the priority and extent of the various claims of the creditors, pursuing their remediesthereiri in distinct and independent suits, and perhaps, also,. in different state tribunals of co-ordinate jurisdiction. These are but a few of the cases which may be put to show the propriety, nay, the necessity, of the jurisdiction of the District Court to the full extent of reaching all cases arising out of the bankrupt act.
 

 The truth.is, (as has been already asserted,) that in no-other way could the bankrupt system be put into operation, without interminable doubts, controversies, embarrassments, and difficulties, or in such a manner as to achieve the true end and design thereof. Its success was dependent upon the national machinery being made adequate to all 'the exigencies of the act. . Prompt and ready action, without heavy charges or expenses, could be safely relied on, when the whole jurisdiction was confided to a single court, in the collection of the assets; in the ascertainment and liquidation of the liens and other specific claims thereon; in adjusting the various priorities-arid conflicting interests; jn marshalling the different funds and assets; in directing the sales at such times and in such a manna: as should best subserve the interests of all concerned; in preventing, by injunction or otherwise, any particular creditor or
 
 person,
 
 having an adverse interest, from obtaining an unjust and inequitable, preference over the géneral creditors, by ,an improper use of his rights or his remedies in the state tribunals; and finally, in making a due distribution of the assets, and bringing to a close, within a reasonable time, the whole proceedings in bankruptcy. Sound policy, therefore, and a just regard to public'as well as private interests, manifestly dictated to Congress the propriety of vesting in the District Court frill and complete jurisdiction over all cases arising,-or acts done, or matters involved, in the due administration and final settlement of the bankrupt’s estate; and it is accordingly, in our judgment,
 
 *322
 
 designedly given by the 6th section of the act. In this view of the matter, the District Court has not exceeded its jurisdiction in entertaining the present suit, but it has full power and authority to proceed to the due adjudication thereof upon its merits.
 

 This view of the subject disposes also of the other question made at the bar, whether this court has jurisdiction to issue a writ of prohibition to the District Court in cases in bankruptcy, if it has exceeded its proper jurisdiction. As the District Court has not exceeded its jurisdiction in the present case, the question is not absolutely necessary to be decided. But it may be proper to say, as the point has been- fully argued, that we possess no revising power over the decrees of the District Court sitting in bankruptcy; that the District Court, in the present case, has not interfered with, or in any manner evaded or obstructed, the appellate authority , of this court, by entertaining the present writ; and that we know of no case where this court is authorized to issue a writ of prohibition ,to the District Court, ■except- in the cases expressly provided for by the 13th section of the Judiciary Act of 1789, chap. 20, that is to say, where the District Courts are “proceeding as courts of admiralty and maritime jurisdiction.”
 

 •Upon the whole,- the motion for a writ of prohibition is overruled.
 

 Mr. Justice CATRON.
 

 By the 14th section of the Judiciary Act this court has pow.er to issue writs proper and necessary for the exercise of its.jurisdiction; having no jurisdiction in any given case, it can 'issue no'writ: that it has none to revise the proceedings of a bankrupt court is our unanimous opinion. So far we adjudge; and in this I concur. For., further views why the prohibition, cannot issue, I refer to the conclusion of the -principal opinion. But a majority of .my brethren see proper to go further, and express their views at large on the jurisdiction of' the bankrupt court. In this course I cannot ooncur; perhaps it is the result of timidity growing out of long established judicial habits- in courts of error elsewhere, never to hazard an opinion where no case was before the court; and when that opinion might be justly arraigned as extra-judicial, and a mere dictum by courts and lawyers; be partly disregarded while I was living,-and almost certainly be denounced as undue assumption when I was no more. A measure of disregard, awarded with an unsparing hand.; here and elsewhere,-to the dicta of state judges-under similar .cir- - cumstances.: and it is due to the; occasion and to myself to eay; that I have no doubt the dicta of this court wiH only be treated with be- . coming respect before the court itselfj so long as some of the judges who concurred in them are present on the bench; and afterwards be openly rejected aqno. authority — as they are not. -
 

 The case standing in the District •'Court of Louisiana will test it as well as another. The application for a prohibition was brought
 
 *323
 
 before us at last term; .then the late Mr. Justice Baldwin was here, and one other of the judges now present was then absent; had the matter not then been laid over on advisement, and a decision been had adverse to our jurisdiction to award the writ; and an opinion been expressed by the majority of the judges then- pres'ent, against the legality of the proceeding in the bankrupt court, declaring it void, and that in the state court valid ; would the bankrupt court be bound to conform to such opinion; would it overrule the instructions given in the particular case by the Circuit Court on the questions adjourned, dismiss the petition of Christy, the assignee, and let the decree and salé foreclosing the mortgage made by the state courts stand ? Will the bankrupt court of Pennsylvania be bound, either judicially or in comity, by the opinion now given by a majority of the judges present, to overthrow that of Mr. Justice Baldwin in the case hereto appended; or is it bound to conform ? Are the bankrupt courts in all the districts that have held the state proceedings on liens to be valid, and not subject to their supervision, now bound to suppress such .proceedings on the suggestion of assignees that they were erroneous or inconvenient, regardless of proof, as was done in Louisiana, and thereby overhaul cases, in great numbers supposed to be settled? Certainly not. This court-has no power over the bankrupt courts, more than they have over this court; the bankrupt law has made them altogether independent, ■and their decrees as binding as ours, and as final. We have as little power to control them as the state courts have; they may concur with the reasoning of either, or neither, at discretion. I therefore think we should refrain from expressing any extra-judicial opinion on the present occasion; we did so in Nelson
 
 v.
 
 Carland, 1 How. 265, a case involving the constitutionality of the bankrupt-law, and I then supposed most properly, by the majority of the court, who thought we had no jurisdiction : a more imposing application, requiring an opinion, could not have been presented, as twelve hundréd cases depended on the decision of the .District Court of Missouri, which was opposed to the constitutionality of the law; and to revise it the case was brought here. So in Dorr’s application, at the present term, for a writ o
 
 £ habeas
 
 corpus, the same course was pursued. That application and this are not distinguishable in principle : in neither had this court power to bring a case for judgment into it; there, and here, we held nothing was before us, or could be brought before us. With this course I would now content myself, was it not that by acquiescing in’silence with-the opinion óf my brethren I might be supposed to have agreed with them in the' bourse pursued ; and also in the views expressed in the affirmance of the jurisdiction exercised under the bankrupt law by the Circuit Court of Eastern Louisiana; to both of which my opinion is adverse, and that most decidedly. The case presented to that court was this:—
 

 
 *324
 
 In 1839, Walden gave to the City Bank a mortgage to secure the payment of $200,000 loaned him, on a plantation and town lots.
 

 In. 1840, he instituted a suit in the District Court of the state, in New Orleans, to .set the mortgage aside- as void ; a trial was had, and the court adjudged the mortgage valid ; from this Walden appealed to the Supreme Court of Louisiana, and that court affirmed the judgment.
 

 The bank then proceeded in the District Court of the state to foreclose the mortgage, and on the 17th of May, 1842, an order of seizure and sale was made; and an actual seizure of the property was. executed on the 19th of May. The- sale took place on the 27th of June.
 

 The property was sold by lots, after appraisement, in conformity to the laws of Louisiana, and the bank became the purchaser at the price of $160,000.
 

 That the sale was made in regular and due form, according to the modes-of proceeding in the state courts, cannot be controverted.
 

 On the l8thof June, 1842, Walden filed his petition for the-benefit of the bankrupt law; and on the 18th of July was declared a bankrupt, and an assignee appointed. The $200,000 was on Walden’s creditor list, but the bank refused to prove its.debt, and relied on the decree of foreclosure, and the force of its lien, by the mortgage. .
 

 . Christy, the. assignee, filed his petition in the bankrupt court, and as part- of the proceeding in bankruptcy, to have the sale declared void : 1. Because it was made after Walden applied for. the benefit of the bankrupt law. 2. Because' the sale had been unfairly con-1 ducted. 3. Because the proceeding in the state court-was erroneous. 4, Because the debt was1’affected with usury, and therefore thp mortgage void originally.; and should be so decreed by thé bankrupt court.-
 

 The bank, appeared, ánd pleaded to the jurisdiction of the bankrupt court; and relied on the proceedings-of the state court as valid by answer. Exceptions were taken to this plea and.answer, which were adjourned to the Circuit Court; there it was adjudged, and the District Court instructed:
 

 1. That it had full and ample jurisdiction to try all the questions set forth in the petition of-the assignee; and to try, adjudge:, and determine the same between, the parties.
 

 2.' That the seizure and sale of the state court were void; and that the District Court of the United States do declare it void.
 

 3. That the District Court has full power and authority-to try and determine the validity of the mortgage; and if proved on the trial void, to declare it so, and to.make a decree.ordering the property to bé sold for the- benefit of the creditors generally ; but if found valid, the bank to have the benefit of'its lien.
 

 This decree pronounced void the judgment of the Supreme Court
 
 *325
 
 of Louisiana, affirming that of the inferior court declaring the mortgage valid, and not affected with usury; which- was conclusive, between Walden and the bank before the bankrupt law.existed. 2. It declared void the decree and order of seizure made before Walden applied for the benefit of the act — and. it declared void the sale : In short, it annulled all the judgments of the state courts, and assumed to extinguish the title acquired under them; and has éxtinguished in form and fact, if the views of a majority of. my present brethren be correct, a title.indisputable according to the laws of Louisiana standing alone; this is manifest from the slightest'examination of the facts, and laws applicable to them. On the 18th of July the decree, declaring Walden-a bankrupt was passed ; up to this.dáte.he might or might not be .declared a bankrupt, either.at his own instance, or that of the court; - therefore he was a proper party before the state court until that time-; afterwards he was represented by his assignee; his property was under execution when he was- declared a bankrupt; if he had then died, still- the duty of'.the Officer would have been to sell; the execution having' commenced,, a natural,or civil death could not defeat it, as. the property was in the custody of the law. • .
 

 If it be true, that this title is void; it follows every other is void, where a, sale has taken-place after the defendant to-the'execution (issued by a state court) had applied for the benefit of the bankrupt law; and this whether the. execution was awarded in the form usual to courts of law, or by decree in a court of chancery, ordering a seizure and sale.by force of the decree. Every sheriff, or commissioner in chancery, executing such writ or decree, must have been a trespasser ;• and all persons taking under-such sales deluded purchasers. In' the .eighth circuit there are very many such eases beyond doubt; they are founded on my opinion acting with the district judges, who fully concurred with me, that such sales were lawful, and the titles acquired under them valid. In two other circuits at least, similar views have been entertained, and no doubt similar consequences have followed. It is therefore.due to interests so extensive, affecting so many titles, that they should not be overthrown until a case-calling for the authoritative adjudication of this court .is presented involving them, and therefore thesé brief views háye been expressed ; not oh the jurisdiction, of the bankrupt courts generally; but on the precise facts presented as the grounds .on which the prohibition was demanded- '
 

 On the force of the lien, and the remedy to enforce it, as a right excepted from the bankrupt law, I have said nothing, beeause my late brother Baldwin was called on to follow the decision given in . .Louisiana and refused. As he decided-under the responsibility of passing on men’s rights, and. from whcfse judgment there was no appeal, his opinion is judicial, and authoritative throughout his late circuit, whereas mine on the present occasion would be extra-judi
 
 *326
 
 cial, and therefore I append his instead of any I may entertain individually.
 

 In the aforegoing opinion of Mr. Justice Cathon. Mr. Justice Daniel concurs.
 

 Opinion of Mr. Justice Baldwin, adopted by Mr. Justice Cateon as a part of his dissenting opinion.
 

 In the matter of John Berlin, a
 
 Bankrupt. Oct. 26,1843.
 

 On the 13th of May,1843, the assignees of John Kerim, a bankrupt, presented their petition to the judge of the District Court for the eastern district of Pennsylvania, praying for an order, authorizing them to sell certain, real estate of the bankrupt, in Delaware county. On the face of' the petition it appeared that at the time of the decree of bankruptcy, the property was subjected to encumbrances amounting to $14,800; that it had been sold by the sheriff of Delaware county on the 11th of May,'1843, for the sum of $8000, by virtue of proceedings issued Jay the Court of Common Pleas of Delaware county,' under one of the mortgages recorded before the decree of bankruptcy, but the purchaser had not complied with the terms of the sale. • The assignee in bankruptcy contended that the sheriff could not'make title to the premises, and' under a decision of the Circuit Court' in Louisiana, claimed ■ the right to sell. The district judge-(Randall)'refused to grant the order, but at request of the parties adjourned the question to the Circuit Court, where the following opinion w’as delivered by Baldwin, J.
 

 The following questions have been certified by the district judge for the opinion of this court:
 

 “1st. Does a sale by a sheriff after a decree of bankruptcy, by virtue of process issued on a judgment or mortgage, which was' a lien on the property of the bankrupt before and at the time of the decree, divest the title of the assignee in bankruptcy ?”
 

 “2d. In case of a sale made by the assignee under an.order of the court, if the whole of the purchase money is not sufficient to discharge the liens existing at the time of the decree, are the liens divested by such sale ?”
 

 The leading principle which has governed this court in the construction' of the Bankrupt Act óf 1841 has been to consider it as establishing a uniform law on the subject of bankruptcies, in the most comprehensive sense of the words as used in the Constitution, in which there is no other restriction on the-power of Congress than that the - laws shall be uniform throughout the United States. To make it so in its practical operation, it must be taken as it reads,its words must receive their appropriate meaning, with reference to the whole law, and the policy developed in its various provisions.
 

 These constitute that system which it was intended to establish)
 
 *327
 
 not by assuming that the design of the law was to adopt any pre-; existing rules and principles found only in the former legislation of Congress, or in other countries, and' then to so apply it as to effectuate a supposed policy not apparent in the law itself, nor consistent with its language, the insertion of which into the system must make it operate according to the intention of other legislatures, and*require a mode of construction which will do violence to the plainest terms used to denote and declare the policy and general principles which Congress have actually established.
 

 That the act of 1841 is anomalous in its provisions, unlike any other-known in any legislation here or elsewhere, cannot be doubted. In the great outlines as well as in the details of the system, we feel the exercise of an express plenary power, competent to act at its own unlimited discretion, (so. that the action be uniform,) either by adopting or modifying some old system on the subject of bankruptcy or prescribing a new one; 'the latter mode has seemed the better in the eye of’the. legislature, and the duty of the judicial department, is to consider its intention and to carry it into effect.
 

 In applying this principle to the solution of the first question now submitted, there seems no difficulty as to the policy and intentions of the law from its unequivocal language, which, as we have heretofore held, contains an express prohibition to the judicial power, not to so construe any provision as to annul, destroy, or impair any lien, mortgage, or other security, on property which is valid by the laws of the states respectively-, and not inconsistent with the 2d or 5th sections.
 

 The validity of a mortgage or judgment is submitted to no other test than these — the laws of the states and these two sections; if they stand this scrutiny, the duty of the courts is imperative. The Bankrupt Act protects all valid judgments or mortgages against any construction which shall impair- them, to the same extent as the Constitution guards the obligation of contracts when attempted to be impaired by state laws. Having heretofore given this as, not the construction merely, but the inevitable result of language incapable of being mistaken in any fair reading of the last proviso in the 2d section, and stated the reasons therefor at large, it is not deemed either necessary or useful to now resume the investigation of that provision of the law, as no doubt was then or is now entertained of its meaning; vide Ex parte Dudley et al., Pennsylvania Law Journal, 302. If additional reasons could be requisite to elucidate this view of that proviso, they will be found in the 11th section, which is framed to meet its provisions — by authorizing the assignee with the order of -the court, to redeem and discharge any mortgage or lien upon any property of the bankrupt," though payable at. a future day, and to tender performance of its conditions.
 

 • This authority to redeem and discharge a lien presupposes its validity, that it cannot be impaired by any power of the court, and
 
 *328
 
 that the assignee of the bankrupt could not take the property so bound before the lien Ayas discharged, on any other terms than those on which it was held by the bankrupt himself,.before any decree of bankruptcy had vested his right's. in the assignee, else vvhy should it have been deemed necessary to authorize him .to redeem or discharge the lien, if it Avas not in full force as well after as before the petition or decree. ■ Neither the próviso. to the 2d or the 11th section discriminate betAveen a lien existing before the petition filed . or after it; both comprehend all liens existing at the time of the de- ' cree as burdens on the property, and contemplate the necessity of their payment in full before apy other creditor can come .in upon' it. The only fund for their payment being the assets of the bankrupt in the hands of the assignee, it is clear that the rights of those creditors who have liens, are, and must be,, paramount to ...any Avhich accrue under-the bankruptcy to the assignee or general creditor.' When liens are paid, then-the property which they bound becomes distributable by the assignee; if not paid, the rights of the lien creditor remaining incapable • of being impaired by any authority conferred by the Bankrupt Act, stands perfect as if that act had not been passecl; so that, if valid by .the law of .the state,, and not .inconsistent with the 2d. or 5th sections of that law, they may consequently be enforced by á sale or other process conformably to the existing laws of the state for enforcing liens, AA'hich no court can annul, destroy, or impair, by any proceeding in bankruptcy. On this subject, the principles established by the Supreme Court, in the case of Bronson
 
 v.
 
 Kenzie, are replete Avith the soundest rules of jurisprudence and constitutional law, and directly applicable to the question now under consideration, Avhich is, in all respects, anala-gous to the one then before that court on the nature 'of the obligation, of the. extent of the mortgage and the rights .of the mortgagee; •and the validity of the state law, AA’hich impaired his rights to enforce the payment of the mortgage money. In that case, the court declared, that the obligation of the contract, the rights AA’hich the mortgagee acquired in the mortgage premises, depended on the then existing laws of the state, which “ created and defined the legal and equitable obligation of the mortgage contract.” 1 Hoav. 315. That the Constitution equally prohibits the impairing them by a state- law, acting on the remedy or directly on the contract itself, “if.it so changes the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests in it.” 1 Hoav. 316. “ That it may be seriously impaired by burdening the proceedings Avith new conditions and restrictions, so as..to make the remedy hardly worth pursuing.” 1 Hoav. 307. “That the rights and-remedies of mortgagor and mortgagee by the law then in force, were a part of the laAv of the contract without any express agreement of the parties — they AA’ere annexed to the
 
 *329
 
 contract at the time it was made and formed a part of it, and any subsequent law impairing the rights thus acquired, impairs the obligations which the contract imposed.” 1 How. 319. And on these principles a state law'which encumbered the remedy of the’mortgagee by conditions imposed after its obligation had attached was null and void. In this case the question presented is, whether a court of the United States, sitting in bankruptcy, can, by any rule, order, or decree, impair the right of a creditor by mortgage or judgment, to enforce the payment of his debts by a sale of the property mortgaged or encumbered by the lien of .a judgment, according to the provisions of the state laws. If the right and power to sell can be- taken from the creditors and conferred -on .the assignee of a bankrupt, who is a debtor by a mortgage or judgment existing, a.t the time of the decree of bankruptcy; if the validity of” the liens, the time, and terms of sale, and the distribution of the proceeds, can, under the bankrupt law, be determined and regulated by a judge in a proceeding in bankruptcy, from which there can be no appeal, then the remedy for enforcing-a mortgage or judgment is no. longer annexed to the contract or a part of it. The empty right still remains in the mortgagee, yet the remedy is taken from him by the assignee of his debtor. The final adjudication, and even his ultimate rights, and the mode of administering the remedy, is made dependent on the discretion of a judge, exercised by the summary proceedings prescribed by the Bankrupt Act, instead of the regular course of the law as administered in the courts of a state. For such a'course, there.is not only no warrant in the.law, but it is a direct violation of the prohibition in the section, by- so construing the law as to negative its express language, and taking from lien creditors, by mere judicial power, those very rights and remedies which are placed beyond its exercise, in terms positively forbidding it, in as plain and emphatic language as that in which the Constitution declares that “ no state shall pass any law impairing the obligation of contracts.” The principles of the Supreme Court in the case of Bronson, must be repudiated before a judge can exercise a power under the Bankrupt Act which is forbidden to a state by the Constitution. If either the obligation or the remedy is. impaired, it matters not by whom it is done; no state has .any power to do it; Congress can only do it by a “uniform law on the subject of bankruptcy”’ nor when the law is silent can the courts do it without the usurpation.of legislative power. But the-law is not silent; it speaks to the judge;- it forbids him to do any act’which impairs any lien then existing, and, insdeckling the first question submitted in this case, I answer in the affirmative, and repeat the language of the Supreme Court: “and if would ill become this court under any circumstances to depart from the plain meaning of the words used, and to sanction a distinction between the right and the remedy which would render this provision illusive and nugatory; mere
 
 *330
 
 words of form, affording no protection and producing no practical result.” Howard, 318.
 

 But were the Bankrupt Act open to construction, and the pro- ■ viso of the 2d section left out of view, the result would be the same. There is no provision m the act that interferes with the laws of a state, which create and defend the obligation of a contract which is a lien on property; there is nothing which professes to effect the remedies attached to such contract, one incident of which is the power of the creditor to sell or extend as the laws of the respective states have prescribed; it requires the plenary and unlimited power of Congress over the whole subject of bankruptcies to abrogate state laws relating to liens, or to take from state courts the administration of remedies to enforce them, and above all to prohibit the' creditor from resorting for his remedy to that law which prescribed it, and substituting the assignee of a bankrupt, the mere creature and servant of a judge of thqJDistrict Court, in his place, without and against the will of the creditor. Congress may delegate such power to-a judge or a court, but it must be in plain terms, leaving no doubt of their intention to do so; but the proposition is a bold one indeed, that judicial power is competent to do it, when the legislature has not given its sanction to its exercise; it would give the Constitution a construction which would authorize the courts to exercise the power granted to the Congress, without the passage of a law delegating it to the judicial department. So far as the Bankrupt Act, by express words, or necessary implication, affects state laws, state rights, the power of state courts, or the rights and remedies of suitors therein, it must be paramount, yet too much caution cannot be observed on this subject by the courts of the United States.
 

 The settled course of jurisprudence in the state is to be 'overlooked only, when such is the intention of the law; no intention to do so is to be presumed, no policy is to be assumed as the basis of the law, other than what its words indicate, and nothing is to be borrowed from any other system which is not consistent with that which Congress has thought proper to create. A leading feature of that system is the protection of all liens existing at the time of the decree of bankruptcy; they are created by contracts which by their own force create a remedy to enforce them; this remedy is the right of the crédito);, the rule for its exercise is the law of the state, the power to sell in this slate is the essence of both right and remedy. Congress has not impaired either, and forbidden it to be done by any construction of the Bankrupt Act; a sale made pursuant to the laws of the state must therefore divest the title of the assignee in bankruptcy.
 

 If the foregoing views are sound, they dispose of the two questions; an order of the court, in bankruptcy can confer on the as-signee no power which Congress has not conferred on the court; its powers are what the law has delegated, and none other; the law
 
 *331
 
 may and must-be construed where it is open to construction, but where the law itself forbids construction it must be taken and followed as it reads. If, therefore, an order of court' is made that would, in its execution by an assignee, impair a lien protected by the proviso in the 2d section, it is an excess of authority, and therefore void;
 
 á fortiori
 
 the divesting of a lien in the case put in this question is a much higher act. of power than merely impairing it by-affecting the remedy. The property bound by the lien is taken from the creditor, his whole right is .extinguished, and his debt is lost entirely, unless he comes in for his dividend of the assets of the bankrupt’s estate.
 

 Every principle established by the Supreme Court in tire case of Bronson, as well as the protection given to liens by the Bankrupt Act, would be utterly prostrated, if a sale by an assignee would disencumber property mortgaged or bound by a judgment; such a doctrine would equally militate with other plain provisions of the law, which clearly point out what passes by the decree of Bankruptcy to the assignee, when_ it passes, the extent of his, and the power of the court, and the nature of a purchaser’s title. The 3d section vests all the property and the rights of property of the bankrupt in the assignee
 
 “
 
 from the time of the decree of bankruptcy;” he then stands in the position of the .bankrupt “ before and at the time of his bankruptcy declared;” standing in the'place of the bankrupt, the measure of his rights of property is necessarily that of the assignee, who can take nothing which did not belong to the bankrupt when the law made the conveyance of all his rights of property. To the property which was mortgaged, the. only right of the as-signee was to redeem it; if it was bound by judgment or other lien, the bankrupt held it subject to its payment;,he could sell the equity of redemption on the land itself, .subject to the lien, but the purchaser could not hold without paying it. The assignee can have no other rights by force of the decree, which is a conveyance by operation of law, than he could acquire by the deed to the bankrupt; nor could the assignee convey a greater interest than the law devolved on him; or the court by their order make his or the estate of a purchaser under him, an absolute one discharged of the lien without payment. The 11th section is framed to meet this view of the 3d; by giving power to the court to authorize the assignee to redeem, and omitting any power to order a sale, it is manifestly intended merely to put the assignee in the place of the bankrupt, but in no other respect than enabling the assignee to appropriate the assets in his hands to disencumber the property by payment. Following the proviso in the 2d section, the 11th withholds the power of sale,-as that might impair the lien; we thus find that it was deemed necessary to provide for the power of the assignee to' redeem; it cannot have been intended that there should be by implication alone the higher power of sale, that in its exercise would take from the
 
 *332
 
 creditor the protection given so carefully by the 2d section-; the words of the 11th admit of no such.construction, and eyen if they did, the court could not give it without overlooking the plain language of the 15th section. “ And be it further enacted, that a copy of any decree of bankruptcy, and the appointment of assignee, as directed by the 3d section of this act, shall be recited in every deed of lands belonging to the bankrupt, sold and conveyed by any assignee underand by virtue of this act; and that such recital, together with a certified copy of such' order, shall be full and complete evidence both of Hie bankruptcy and assignment therein recited, and supersede the necessity of every other proof of such bankruptcy and assignment to validate the said deed; and all deeds containing •such recital, and supported by such proof, shall be as effectual -to' pass the title of the bankrupt of, in, and to the lands therein mentioned and described to the purchaser, as fully to all intents and purposes as if made by such bankrupt himself immediately before such order.” Here is as precise and perfect a definition of the title which passes to the purchaser by a sale by the assignee under an order of court, or otherwise by virtue of the bankrupt act, with the effect thereof; “ it is the same to all intents and purposes as if made by such bankrupt himse’ f immediately before such order,” in the words of the 15th section, with or without, an order of sale. There, is no express provision giving the court power to order a sale. The 3d-section ^authorizes the assignee “to sell, manage, and dispose of the property, to sue for and defend the same, subje'ct to the orders and directions of the court, as fully to all intents and purposes as if the same were vested in or might be exercised by’ such bankrupt before or at the time of his bankruptcy, declared as aforesaid.” Connecting this with the'15fh- section, declaring the effect of a sale by an assignee, the answer to the second question is most obvious. Such sale has the saíne effect as if made by'the bankrupt, and no other. . It can divest no lien existing at the time of. the decree or order declaring him a bankrupt. The word “ order” in the 15th section refers either to.that or to the order of sale; it is not material to which. If to the decree, then the deed of the assignee conveys-only such title and estate as the bankrupt then- had; if to the order of sale, then that is the time to which his right is referred. But in neither case can a sale divest a lien “ existing before.or at the time,” dr “immediately” before, such order. Thus taken, the Bankrupt Act is an affirmance of the universal principle as laid down by the Supreme Court in Rankin
 
 v.
 
 Scott, 12 Wheaton, 179, “that a prior lien gives a prior claim, which is entitled to a prior satisfaction o.ut of the subject it binds,” unless it be defective, or the party holding it has done some act to postpone him; and that a purchaser is bound by the lien unless there is a prior act of the legislature to protect him from it. 12 Wheat. 80, The second question therefore is answered in the negative.