## ABRAHAM BAUM *vs.* MYER STERN.

Bill in the State Court, by A., against B., for partition of land. C. and D., judgment creditors of B., intervened, and a decree was made for sale of the land, and directing B.'s share of the proceeds to be applied to the judgments of C. and D., in their order of priority. After the decree, but before sale thereunder, B. was adjudged a bankrupt, and, thereupon, C. and D. intervened in the Bankrupt Court, and a decree was made by that Court, ordering B.'s assignee to sell his interest in the land, and apply the proceeds to C.'s judgment. Under this decree, the assignee sold B.'s interest in the land to E., and he filed a separate bill against A. for partition: *Held*, That E. could not sustain his bill, and it was dismissed.

E. having, by his purchase at the assignee's sale, succeeded to all the rights of B., C. and D., his remedy was to come in under the decree in A. against B., and claim the interests of the parties to whose rights he had succeeded—*semble.*

The execution of a decree for partition, of a State Court, is not arrested because one of the parties to the suit becomes a bankrupt, and his share of the property is vested in the assignee. The assignee, like any other purchaser, pending the suit, takes subject to the rights of the other parties.

Proceedings in a State Court to enforce a lien, pending at the commencement of proceedings in bankruptcy, are not affected by the latter, but the creditor n., y go on to obtain satisfaction out of the lien. It is otherwise as to a personal judgment against the debtor.

BEFORE CARPENTER, J., AT CHARLESTON, APRIL TERM, 1869.

The facts of the case are stated in the decree of His Honor the Circuit Judge, which is as follows:

CARPENTER, J. This was a bill, filed by Baum, for partition of certain premises, situated in the city of Charleston, in one undivided moiety, of which Stern was tenant in common.

From the pleadings and evidence, it appears that, in August, 1866, the premises were jointly owned by Philip Epstin and Myer Stern. On the 10th of August, 1866, Stern filed his bill for partition against Philip Epstin. N. Zemansky, who had entered judgment in the United States Court against Philip Epstin, on 23d October, 1866, and Simon Wolff, who had entered judgment against Philip Epstin, in the Common Pleas for Charleston County, on —— ——, 186–, were made parties to the proceedings in equity. Upon the report of the Master and Commissioners in partition, a decree was made, on the 11th November, 1867, for sale of the premises, after due advertisement. (*a.*)

On the 2d March, 1868, and before any sale made under the decree, Philip Epstin filed his petition in the Bankrupt Court, was duly adjudged a bankrupt, and Henry Deas, Jr., appointed his

(*a.*) See this case reported in *Stern* vs. *Epstin*, 14 Rich. Eq., 10.

assignee. Both the judgment creditors of Epstin filed their peti-
tions in the Bankrupt Court, setting up their liens, and praying
sale of the premises for the satisfaction of the liens.

The petition of N. Zemansky was referred to the Register in
Bankruptcy, who reported upon the validity and amount due on
the judgments, and, on the 22d July, 1868, the United States Court,
sitting in bankruptcy, ordered a sale of the interest of Philip Ep-
stin in the premises, for the payment of the lien of N. Zemansky.
Under the judgment of the United States District Court, sitting in
bankruptcy, the interest of Philip Epstin was sold at auction.
Abraham Baum, the complainant, became the purchaser, and title
was executed to him for one-half part of the premises, by Henry
Deas, Jr., the assignee, and Baum has filed his bill, in the present
cause, for partition of the premises between himself and his co-
tenant, Myer Stern. It is the right of the defendant in partition
to have the title of the complainant in partition established before
any sale or partition of the premises can be made, and that I un-
derstand to be the issue made in the present proceedings.

When Philip Epstin filed his petition in bankruptcy, no sale
had taken place under the decree of the Court of Equity. All the
proceedings in equity and the decree of the Court rest, for their
validity, upon the fact that title to one-half of the premises was in
Philip Epstin; that title had not been divested by sale under the
decree, and, on the adjudication of bankruptcy and appointment of
an assignee, all the estate, right and title of Philip Epstin vested,
by operation of law, in the assignee of Philip Epstin.

Of the jurisdiction of the Bankrupt Court to order a sale of the
estate of a bankrupt, for the satisfaction of liens, I cannot enter-
tain a doubt.

The Act of Congress, approved March 2d, 1867, known as the
Bankrupt Act, extends the jurisdiction of the District Court of the
United States to all cases and controversies arising between the
bankrupt and any creditor, or creditors, who shall claim any debt
or demand under the bankruptcy; to the collection of all the assets
of the bankrupt; to the ascertainment and liquidation of the liens
and other specific claims thereon; to the adjustment of the various
priorities and conflicting interests of all parties; and to the mar-
shalling and disposition of the various funds and assets, so as to se-
cure the rights of all parties, and due distribution of the assets
among all the creditors; and to all acts, matters and things to be
done under and in virtue of the bankruptcy, until the final distri-

bution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy.

Sitting here, as Judge of the Court of Equity of the State, I am bound to assume that all the proceedings in that Court were regular and legal, and as the complainant produces the order for sale, made by a Court of competent jurisdiction, and a deed executed by the proper officers of the Court, I must regard his title as clear, and himself entitled to the relief prayed for in his bill.

It is conceded by the counsel in the cause that an equal partition, by metes and bounds, cannot be effected.

It is, therefore, ordered, adjudged and decreed, that the Sheriff of Charleston do proceed, after giving twenty-one days' notice in one or more of the gazettes published in the city of Charleston, to sell the premises described in the pleadings; one-third cash, balance in three equal successive annual installments, with interest at the rate of seven per cent. per annum, payable annually, secured by bond of the purchaser and mortgage of the said premises; the buildings to be insured, and policy of insurance assigned; and that, out of the proceeds of said sale, he do first pay the costs of these proceedings, and the costs in the proceedings in *Stern* vs. *Epstin;* and that he do divide the residue of said proceeds equally between the said Myer Stern and A. Baum.

The defendant appealed, and now moved this Court to reverse the decree of His Honor, on the following grounds:

1. Because, under the decree of Chancellor Johnson, in the case of *Myer* vs. *Phillip Epstin et al*, filed on the eleventh day of November, eighteen hundred and sixty-seven, the lot of land in King street was ordered to be sold, and the proceeds of sale distributed among the parties to the said cause, including Nathan Zemansky and Simon Wolff; and the said decree is still valid and subsisting; and the present bill, which likewise seeks a sale of the said lot, cannot be maintained.

2. Because, Nathan Zemansky, having become a party to the proceedings in the case of *Stern* vs. *Epstin*, upon his own petition, intervening for his rights, and praying that they be protected,.is concluded by the said decree; and by no proceeding of his in the United States Court, after the bankruptcy of Philip Epstin, could the rights of the parties under the said decree be impaired.

3. Because the complainant, Abraham Baum, purchased at the sale by the United States Marshal, no more than the right, title

and interest of the defendant, Philip Epstin, in the said lot of land in King street, subject to the said decree, and he acquired no right, by the conveyance to him by the said ·Marshal, to repudiate and annul the said decree, and file this bill for the sale of the said lot, ignoring the vested rights of all persons thereunder.

4. Because His Honor erred in ruling that the complainant took a good title to one undivided moiety of the said property, under the deed of Henry Deas, Jr., assignee, notwithstanding a previous existing decree in this Court for the sale of the said premises.

Simon Wolff, whose petition praying leave to be made a party to the proceedings hád been dismissed by His Honor, also appealed, on the same grounds, except the last.

*Cohen*, for Stern, appellant.

*Buist*, for Wolff, appellant.

*Porter & Conner*, for Baum, appellee.

March 28, 1870. The opinion of the Court was delivered by

WILLARD, A. J. Complainant has obtained a decree in partition against his co-tenant, the defendant, Stern, from which Stern now appeals. The facts brought up by the appeal are, that complainant's title was obtained by purchase at a sale of Epstin's interest in the land, under a decree of the United States District Court in bankruptcy. At the time of the institution of the proceedings in bankruptcy, Epstin, the bankrupt, was bound, as to the land in question, by a decree for partition in a suit by Stern, against Epstin, to which Zemansky and Wolff, judgment creditors of Epstin, were parties.

Epstin petitioned to be declared a bankrupt, and Zemansky and Wolff both intervened as creditors in the District Court upon petition. Epstin was declared a bankrupt, an assignment of his property made, and the real estate in question was sold by the assignee in bankruptcy, and the complainant became the purchaser. Wolff, who intervened in the present case by petition, also appeals from complainant's decree.

The main question in the case is, whether the complainant, in becoming a purchaser from the assignee in bankruptcy, of Epstin's interest in the land in question, became bound by the decree in partition in the suit of *Stern* vs. *Epstin*. If so, the present bill cannot be maintained, the matter being *res adjudicata* as to such parties

and their privies. Unless complainant can disconnect himself from the decree in *Stern* vs. *Epstin*, he must be regarded as affected by privity with such decree. If complainant had, after decree, purchased Epstin's interest without the intervention of a judicial proceeding, he would have been bound by the decree.—*Bishop Winchester* vs. *Paine*, 11 Ves., 194; *Murray* vs. *Ballow*, 1 John's Ch., 566. So he would be bound had he purchased at Sheriff's sale under a judgment against Epstin.—*Stern* vs. *Epstin*, 14 Rich. Eq., 10. Does he stand in a better position as purchaser from the assignee in bankruptcy? He took, by such purchase, only the estate that passed into the hands of the assignee.

The assignee took the rights of Epstin "in the same plight and condition as he possessed them."—*Mitford* vs. *Mitford*, 9 Ves., 87. He also took the legal liens of Zemansky and Wolff, with power to sell by way of enforcing them. Epstin, Zemansky and Wolff, being parties to the decree in *Stern* vs. *Epstin*, the estate in the hands of the assignee was charged with the equities established by that decree.—*Mitford* vs. *Mitford; Brown* vs. *Heathcote*, 1 Atk., 160. Accordingly the complainant, succeeding to the rights, as they stood in the hands of the assignee, is bound by the decree in *Stern* vs. *Epstin.*

It has been contended, in behalf of the complainant, that the exclusive jurisdiction of the District Court, in cases of bankruptcy, ousted the jurisdiction of the State Court. It is not easy to perceive how exclusive jurisdiction in matters of bankruptcy can oust jurisdiction in partition. But it may be said that, inasmuch as the decree in *Stern* vs. *Epstin* directed the application of the proceeds of Epstin's half of the premises to the payment of the judgments of Zemansky and Wolff, in their order of priority, it ought to be regarded, *quoad hoc*, as a remedy to enforce the payment of Epstin's debts, and, therefore, as brought within the range of a jurisdiction in matters of bankruptcy. Proceedings to enforce the lien of a creditor in a State Court, pending at the commencement of proceedings in bankruptcy, are not affected thereby, but the creditor may proceed to obtain satisfaction out of his lien; though, as to a personal judgment against his debtor, he is liable to be affected by his certificate of discharge.—*Peck* vs. *Jenness*, 7 How. U. S., 612. It is not a question here whether the District Court might have affected the rights of the parties as established by the decree, as nothing of that kind has been attempted.—*Ex parte Christy*, 3 How., 292; *Norton's Assignee* vs. *Boyd*, Ib., 426. Nor is there any con-

Baum *vs.* Stern.

flict between the rights of the several parties, as established by the decree in *Stern* vs. *Epstin*, and as fixed by the bankrupt proceedings. The complainant virtually claims that he has succeeded to all the rights formerly possessed by Epstin, Zemansky and Wolff, as those rights stood under the decree. If that fact is established in a proper form, it will present the case of a change in the relative interests claimed under a decree, by matter occurring subsequent to the entry of the decree, and he will be entitled to have it modified accordingly. Thus it appears that full force can be given to the rights established through the agency of the Bankrupt Court, while, at the same time, the decree in *Stern* vs. *Epstin* can be carried into execution.

It is clear, therefore, that the present bill ought to have been dismissed.

The third ground of appeal, in both the appeals of Stern and Wolff, advances the proposition that on a sale of the premises, under the decree in *Stern* vs. *Epstin*, the complainant will only be entitled to what, according to the terms of the decree, Epstin would be entitled to receive, namely: the balance of one half of the proceeds of the sale, after satisfying the respective judgments of Zemansky and Wolff. In other words, that Wolff's judgment must be paid before the complainant can receive anything beyond what would be applicable to Zemansky's judgment.

We cannot sanction this view. Wolff submitted his demand to the District Court, and the sale in that Court has worked a change in Wolff's interest in the decree, which passed thereby to complainant, and ought to be enforced for his benefit.

The appeal must be sustained, and the bill dismissed.

*Moses*, C. J., concurred.