WYNNEGAR v. SOUTHWESTERN Co.

[83 South. 3, Division B. No. 20773.]

1. TRIAL. *Peremptory instruction. Conflicting evidence.*
   When the evidence on a material point in the trial is conflicting
   a peremptory instruction should not be given.

2.   PRINCIPAL AND SURETY.   *Alteration of bond material.*

In a suit on a surety bond for the payment of goods and other items furnished the surety's son, when the evidence showed that a clause in the bond relating to payment by the son had been altered by striking out the words, "within thirty-five days after each shipment," and in lieu thereof inserting "at Nashville, Tenn., in fall of 1911," such an alteration was material, since it affected the rights of both parties to the contract.

APPEAL from the circuit court of Prentiss county. HON. CLAUDE CLAYTON, Judge.

Suit by the Southwestern Company against T. J. Wynnegar. Peremptory instructions, verdict and judgment for plaintiff and defendant appeals. See, also, 111 Miss. 412, 71 So. 737, 81 So. 177-410.

The facts are fully stated in the opinion of the court.

*Jas A. Cunningham,* for appellant.

The appellant in its special plea number three, sets up as a defense that this document was tampered with after they signed it so as to change the date of maturity of the principal's obligation from "thirty-five days" so as to read "in the fall of 1911," which plea it is alleged renders the said obligation void. (a) Because the instrument sued upon was not the instrument signed by the appellant; (b) And the modifications of the instrument was an extension of time of the principle so as to absolutely release the sureties, but this question of modification was a controverted question of fact for the jury to pass upon. (c) And the evidence shows that the time at which these payments were to become due was unequivocally modified by an extensive contract which was controlling between this principal and the appellees as admitted by the witness Coffey for the appellee, and which extended the time of payment and which rndered this contract of suretyship void.

The action of the trial court in brushing aside all of the evidence tending to establish these various defenses

in this cause of action is very extraordinary and is a most arbitrary deprivation of the right which litigants are supposed to have to submit all controverted questions of fact to a jury of their peers for determination. And in order to acquire this right the appellant appeals to this court.

Under the first special plea relied upon and fully described in the above statement of this cause, Mr. Wynnegar testified that he had already decided to sign this letter of credit for his son when he was called up by Mr. Prickett as acting manager of the Southwestern Company from Nashville, Tennessee, over long distance telephone, and he made known to Mr. Prickett that he had helped his son before repeatedly, and that his son had been in the employ of that company long enough, if doing any good, to have a cedit of his own, and that if he had not built up a good credit by this time, that he was disinclined to help him. This answer was hypothicated upon the very question of his son's well doing and good credit with the company and just at this place the Southwestern Company in all good conscience were called upon to speak with this knowledge locked in their breasts and a father at the other end of the line reluctant to become surety for his son, but this man did not divulge, but concealed the condition of this boy's credit and the character of his well doing and went on to fully impress the father that the son was doing well and had a good credit.

He answered that among other things, that it was not a question of the boy's credit at all, that they were only asking this as a matter of custom, impressing the father that the suretyship was not sought, but in the view of protecting themselves against the principal's default, but to carry out a custom, Wynnegar's evidence and if this evidence is true, there was certainly a fraudlent concealment and a concealment of matters so directing

inquiry about it that it was his duty to speek. To support view we cite the following to wit: 20 Cyc., p. 75 78 (E).

In our opinion every element of fraud necessary to complete defense was committed by the manager of this company at the end of that telephone line when he landed this old farmer on that occasion and at least this is certainly a question to submit to a jury for their determination.

The defense relied upon under special plea number two and fully described in the statement of this cause above was passed on by this court on a former appeal, but mind you, it was passed upon with the view of determining whether or not the court below was correct in rendering a peremptory finding on the facts for the defendant. I do not understand the court to mean that the question of whether or not Wynnegar made inquiry while standing at this telephone was precluded from being submitted to a jury.

The opinion that where inquiry is made that disclosure must follow and a careful examination of Wynnegar's evidence will convince the mind of this court that just such inquiry was made by this father though the reason he offered for not signing the letter of credit as would require this book concern's acting through its agent Prickett in all good conscience to disclose this former default, dissipation and bad conduct of his son; especially is this true when the company at that time held an unsatisfied obligation from this same appellant as surety and he remained perfectly silent as to all this, but the whole effect of what he said was to lead the father to believe that the son was doing well and maintained a good credit.

It appears to us that as far as this case can go it is to preclude the peremptory instruction on this point and that the cause might be submitted to a jury on this

proposition under proper instructions, but anyway, there are many questions in this case that ought to be submitted to a jury and that were not touched or affected by the former appeal. We most respectfully cite for the careful consideration of the court, 32 Cyc., p. 62.

The defense under this plea sets up that the contract called a letter of credit was modified after it was signed by the sureties so as to extend the time from "thirty-five days" to "in the fall of 1911," which if true would render this obligation void. This was testified both by Wynnegar and Taylor and the cause should have been submitted to a jury on this proposition, 32 Cyc., p. 177. This extention of time, if believed by the jury to be true, would release the sureties on the letter of credit, but just in this connection this appellee company had entered into a contract with this principal, Paul Wynnegar which varied this letter of credit and which controlled and superceded the letter of credit and which has varied the letter of credit and extended the time of payment and thereby released the sureties who did not know of this contract and were not consulted about it, and which was to be kept as a profoundly secret contract according to its own terms, and which extention of time under their theory violated the rule in *Timberlake* v. *Thayer,* 14 So. 446.

Besides acceptance of this surety on this letter of credit without notifying the sureties of the existence of this binding contract varying the same was a fraud on the sureties and ought to release them. 32 Cyc., pp. 65 and 68.

And, now, we therefore, most earnestly insist that this cause should be reversed and remanded with directions to submit each and all the controverted questions herein to a jury.

*E. C. Sharp,* for appellee.

This case has been before the court on a former appeal, and reported in 111 Miss. 412; was reversed, remanded, and retried on the same record.

In the brief of Messr. Cunningham & Berry for appellees, of the formed appeal in this language: ''This is not a question to submit to the jury, ''which is in flat contradiction of the assertions in their brief filed herein. They now strenuously contend that the case set up and submitted to the jury on the second trial, although it was tried on the same record, should have been submitted to the jury. How men's minds do change. In their present brief appellant cites 32 Cyc. pages 65 to 68. In their brief of the former appeal the same authority was cited and this court held as follows: ''This is a different case. The principal in this case, it is true, was insolvent and indebted to the Southwestern Company, but no inquiry was made with reference to whether or not he was so indebted by the sureties. This principal had committed no criminal offense and had been guilty of no act of dishonesty, and the Southwestern Company had reason to believe that the previous indebtedness would probably be paid by him. ''Citing *Seblad v. Citizens Deposit Bank,* 105 S. W. 130, 14 L. R. A. (N. S.) 377. The court held that mere knowledge on the part of the payee of a note uncommunicated to the surety of the insolvency of the maker at the time the note was executed will not release the surety from liability thereon. 111 Miss. 412, and the cases cited therein.

This is identically the same record that was presented to this court on the former appeal, and we submit the opinion in that case disposes of the question in this case. It was not a question for the jury in the former trial and a peremptory instruction for appellee was properly given in the present case.

It is true that appellant now attempts to inject a defense which was not relied upon in the former appeal, and was not seriously contended in the court below; that is that the time of payment was altered, but this is just another case of a drowning man grasping at a straw.

Appellee denies that any alteration was made after the signing, and in view of the fact that the books were sold on time it would have been impracticable to have fixed the date of settlement only thirty-five days distance. The books were to have been paid for in the fall and that would have been the logical time for settlement to be made. The sureties cannot complain when the change, if any, was made for their benefit. By a reading of the surety contract it will be seen that it is a very broad instrument, and the sureties fully realized what they were signing and the effect of their act.

It is further shown by the fact that when Wynnegar's attention was first called to the default he agreed to pay same upon presentation and surrender of the surety contract, record pages, 98 99 and 100. No objection was made at that time to any change or irregularities, but when he was confronted with a default on a former contract of surety, he then declined to carry out his promise to pay, and the various objections raised. Suit was brought on the former contract, the peremptory instruction was given and the judgment affirmed by this court, at the same time that this case was reversed and remanded.

We submit that the court correctly gave the peremptory instruction and that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant signed a surety bond to the Southwestern Company, Incorporated, binding himself for the payment for books, cash, and other goods furnished to Paul Wynnegar, son of the appellant, in the sum of

three hundred dollars. The son defaulted, embezzled property and funds of the Southwestern Company, Incorporated, and absconded. Suit was brought by the Southwestern Company against the appellant and the appellant pleaded that the bond was fraudulently procured by fraudulent concealment of material facts to the risk, and also that the bond was void because it was materially altered after its execution; the alleged alteration being of the clause originally reading as follows:

"Provided the said Paul Wynnegar shall fail to make payment therefor within thirty-five days after date of each shipment for items furnished, and provided further that the indebtedness for which we hereby become responsible at any time shall not exceed three hundred dollars."

The words, "within thirty-five days after each shipment," were stricken out, and in lieu thereof the words, "at Nashville, Tenn., in fall of 1911," written in said contract. The appellant testified that this modification was not in the contract signed by him and that the words were subsequently put in the bond by the appellee or while in its custody. Appellant is supported in his testimony by his cosurety, Taylor; while the appellee's testimony is positive that the modification was made prior to its being signed by Wynnegar and Taylor. Appellant also testified that his son had been employed from 1904, or thereabouts, until 1911 when the bond was signed, and that Paul Wynnegar had not been at home, but had been under the employment and in business for the appellee; that when he was requested to sign the surety bond in suit he declined to do so, stating that his son had been with the company long enough if he had made good to have a credit of his own; and that if he had not made good that he ought to get in some other business, but that the company by its manager informed him that his son had made good and it

was not a question of credit, but a custom of the corporation to require bonds of all its employees or salesmen regardless of credit; and that he signed the instrument under the belief that said statements were true; that as a matter of fact his son had not made good, but had become indebted under former. contract to the company and had been short in his settlement with the company, which matters were well known to the company and were not known to appellant; that he would not have signed the bond if he had been correctly informed by appellee as to said matters. The testimony shows on both sides that Paul Wynnegar, the son, and principal in the surety bond, was at the time in default under another bond, and that the company knew of this fact. The bond in suit, or "letter of credit" as it is called, is dated January 9, 1911, and was signed by the principal, Paul Wynnegar, January 13, 1911. On this testimony the trial judge granted a peremptory instruction for the appellee, and verdict and judgment thereon was entered for three hundred dollars with interest thereon, from which judgment this appeal is prosecuted.

The cause was before this court on a former appeal on a peremptory instruction in favor of the appellant and was reversed. *Southwestern Co.* v. *Wynnegar,* 111 Miss. 412, 71 So. 737.

We think it was error for the court to grant a peremptory instuction in the present case. There was such conflict in the evidence as to both pleas interposed as to make it a question for the jury under proper instructions. *Frazer* v. *Gervais,* Walk. 72; *Planter's Bank* v. *Neely,* 7 How. 80, 40 Am. Dec. 51; 1 R. C. L. 978; *Oakey* v. *Wilcox,* 3 How. 330. If the testimony of the appellant is taken as true with all reasonable inferences to be drawn therefrom, the jury might properly find a verdict for the appellant upon either issue The alteration claimed was material, as it affected the rights of both parties

to the contract. 1 R. C. L. 978. The judgment is, accordingly, reversed, and the cause remanded for a new trial.

*Reversed and remanded.*