**IN RE: Melvin WALKER, Debtor.**

**Melvin Walker, Jr., Plaintiff/Debtor,**

v.

**Got'cha Towing & Recovery, LLC and GFC Lending, LLC, Defendants.**

**Case No. 14–51982–AEC
Adv. Proc. No. 16–05010**

United States Bankruptcy Court,
M.D. Georgia, Macon Division.

Signed June 17, 2016

---

**87.** Doc. No. 121.

**88.** Doc. No. 123.

**89.** Doc. No. 124.

**90.** Doc. No. 125.

For Plaintiff: Martin L. Fierman, 296 North Main Street, Madison, GA 30650–1313

For Got'Cha Towing & Recovery, LLC: Christine L. Mast, Hawkins Parnell Thackston & Young LLP, 303 Peachtree Street, NE, Suite 4000, Atlanta, GA 30308

For GFC Lending, LLC: Jonathan E. Green, Amy L. Hanna, & Madeleine Grace Kvalheim, Baker Donelson Bearman Caldwell & Berkowitz, PC, 3414 Peachtree Road NE, Suite 1600, Atlanta, GA 30326

## MEMORANDUM OPINION

Austin E. Carter, United States Bankruptcy Judge

Before the Court are the respective *Motions to Compel Arbitration* (Dkt. 2, Parts 24–29) filed by the Defendants. These Motions require the Court to balance a tension between the strong policies undergirding the Federal Arbitration Act (FAA)[1] and a most critical provision of the Bankruptcy Code[2]—the automatic stay.

### PROCEDURAL HISTORY

The Debtor filed a petition for Chapter 13 bankruptcy relief in this Court on August 22, 2014. This adversary proceeding addresses a stay violation that allegedly occurred about one month after the filing of the Debtor's bankruptcy case. The manner in which this stay violation came

---

1. 9 U.S.C. §§ 1–16.

2. Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the U.S.Code.

before the Court in this adversary proceeding is somewhat convoluted.

On April 13, 2015, the Debtor filed a *Complaint for Damages* in the Superior Court of Baldwin County, Georgia (No. 15–CV–47481H) (Dkt. 2, Part 3) (the "Complaint"). In his Complaint, the Debtor alleges that GFC Lending, LLC (GFC),[3] and its agent, Got'Cha Towing & Recovery, LLC (GTR), repossessed his Ford Mustang (the "Vehicle") on September 30, 2014, after both Defendants had been given notice of the bankruptcy case and the automatic stay created thereby. The two cognizable legal bases for the Complaint are: (1) violation of the automatic stay arising under § 362, and (2) conversion of, and/or trespass to,[4] the Debtor's property (Dkt. 2, Part 3). The relief sought by the Complaint includes recovery of actual damages for injury to the Vehicle and the value of certain items within the Vehicle lost during its repossession, as well as costs and attorney fees, punitive damages, and interest (whether post-judgment or pre-judgment is not specified).

The Defendants removed this case to the U.S. District Court for the Middle District of Georgia (No. 5:15–cv–00168–MTT) (Dkt. 2, Part 4), which was met by the Debtor with a *Motion to Remand* the case back the Superior Court (Dkt. 2, Part 7). A primary argument of the Debtor in his remand attempt was that "none of the claims [in the Complaint] are founded on a claim or right arising under the .... laws

... of the United States," but instead are state law claims, such as "trespass to personalty and conversion" (Dkt. 2, Part 7 ¶ 2, 5).

GTR filed a *Response* to the Motion to Remand, stating:

> [The Debtor's] claim is that [GTR] repossessed his car *in violation of Federal bankruptcy law.*
>
> . . .
>
> [T]he root of the [Debtor's] claim is not that [GTR] committed a trespass or conversion by repossessing a car that was not to be repossessed. The claim made by [the Debtor] is that [GTR] violated the bankruptcy stay.
>
> . . .
>
> [T]he litigation has a "significant connection" with the bankruptcy case and also the litigation "involves the application and interpretation" of bankruptcy law. *The only reason a claim exists at all is because of the bankruptcy stay.* If the case were remanded, a state court would have to interpret Federal Bankruptcy Law in order to determine whether the stay was violated and whether [GTR's] actions violated Federal Law.

Dkt. 2, Part 11, at 2, 4 (second emphasis added).[5]

The District Court summarily denied the Debtor's Motion to Remand (Dkt. 2, Part 19), citing *Justice Cometh, Ltd. v. Lambert,* 426 F.3d 1342 (11th Cir.2005),

---

**3.** The Complaint originally named "Go-Credit, LLC" as a co-defendant. The Complaint was amended on July 22, 2015 to strike Go-Credit, LLC as a defendant and add GFC. The relationship, if any, between Go-Credit, LLC and GFC is unclear from the record. Accordingly, it is unknown when GFC obtained actual notice that it was a defendant in this action.

**4.** The trespass claim is not apparent from the face of the Complaint. The Debtor first uses

the term "trespass" in his Motion to Remand (*see* Dkt. 2, Part 7 ¶ 5).

**5.** GFC did not file any response to the Motion to Remand, likely because it was not named as a defendant (in the place of Go-Credit, LLC) until July 22, 2015, after the filing of GTR's Response to the Motion to Remand. The District Court ruled on the Debtor's Motion to Remand on September 9, 2015.

which provides that, pursuant to 28 U.S.C. §§ 1331 and 1334, the district court in which the case is pending has original jurisdiction over violations of the automatic stay under § 362 of the Bankruptcy Code (though the district court will likely refer such cases to the bankruptcy court pursuant to a standing order of reference). *See* 426 F.3d at 1343.

On November 9 and 18, 2015, Defendants filed in the District Court their respective Motions to Compel Arbitration. On January 14, 2016, before ruling on the Motions, the District Court referred the case to this Court because "[t]he complaint asserts a claim for damages because of a violation of the automatic stay imposed by filing for bankruptcy" (Dkt. 2, Part 2, at I).[6]

The Defendants pursue their Motions to Compel Arbitration here. Counsel for the Debtor announced his opposition to the Defendants' Motions at a hearing on this matter (*see In re Walker*, No. 14–51982 (Bankr.M.D.Ga. Feb. 25, 2016), ECF No. 42), but has not presented any legal or factual basis for doing so.

By the Motions, the Defendants seek an order of the Court staying or dismissing these proceedings and ordering the Debtor to pursue his claims in an arbitral forum. According to the Motions, arbitration is required under an agreement executed by the Debtor when he purchased the Vehicle (Dkt. 2, Part 27). The Defendants base their position on several provisions of this agreement, including the provision requiring arbitration of "any claim, dispute or controversy ... arising from or related to ... [a]ny repossession, or replevin, of the vehicle" (Dkt. 2, Part 27, at 12). The

Debtor does not contest (but does not confirm) that he agreed to this provision as to both Defendants and that the provision contemplates a repossession of the Vehicle in violation of the automatic stay.

As the parties (in their Motions or otherwise) had not previously addressed the enforceability of an agreement requiring arbitration of a violation of the automatic stay arising under § 362 of the Bankruptcy Code, the Court, by Order (Dkt.15), gave the parties an opportunity to brief the issue. The Debtor did not file a brief. The Defendants, on the other hand, filed a joint brief (Dkt.18), by which they argue that this Court must enforce the arbitration agreement because the Debtor's Complaint asserts only non-core state law claims, and not a violation of the automatic stay.

### CONCLUSIONS OF LAW

### I. Explanation of Controlling Law.

■■■ Section 2 of the FAA provides that written agreements to submit disputes to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to compel arbitration has the burden to prove the existence of a valid agreement to arbitrate the claims in question. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *see also Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 Fed.Appx. 585, 588 (11th Cir.2015). This is because "arbitration is a matter of contract and a party

---

**6.** The District Court referred this case to be decided by this Court as part of the Debtor's (then Chapter 13) bankruptcy case. This Court determined to address this matter discretely (in the context of this adversary proceeding) rather than in the Debtor's bankruptcy case, in part because the Debtor, in filing the Complaint, retained counsel different from the counsel who filed his Chapter 13 bankruptcy case.

cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Once the movant's initial burden is met, the party seeking to avoid arbitration has the burden to show that "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Randolph*, 531 U.S. at 90, 121 S.Ct. 513; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

■ The FAA represents a strong federal policy in favor of arbitration, such that the Supreme Court has subjected to arbitration many federal rights furthering important social policies.[7] To this Court's knowledge, the Supreme Court has not expressly addressed the FAA's relation-ship to the Bankruptcy Code. The Eleventh Circuit, however, has.[8]

In *Whiting–Turner Contracting Company v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.)*, the Eleventh Circuit, disagreeing with the courts below, ruled that the bankruptcy court did not have discretion to refuse to grant a creditor's motion to compel arbitration of a prepetition breach of contract claim asserted by the debtor against that creditor. 479 F.3d 791 (11th Cir.2007). In doing so, however, the Eleventh Circuit recognized circumstances under which a bankruptcy court might have discretion to decline to compel a litigant to arbitrate a bankruptcy-related matter—where doing so would inherently conflict with the underlying purposes of the Bankruptcy Code.[9] *Id.* at 796 ("[W]e look to the

---

7. The Supreme Court has stated:

    [T]he FAA's purpose [is] "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

    In light of that purpose, we have recognized that federal statutory claims can be appropriately resolved through arbitration, and we have enforced agreements to arbitrate that involve such claims. *See, e.g., Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act). We have likewise rejected generalized attacks on arbitration that rest on "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Rodriguez de Quijas*, 490 U.S. at 481, 109 S.Ct. 1917. These cases demonstrate that even claims arising under a statute designed to further important social policies may be arbitrated because " 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' " the statute serves its functions. *See Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors*, 473 U.S. at 637, 105 S.Ct. 3346).

    *Randolph*, 531 U.S. at 90–91, 121 S.Ct. 513 (citation format revised for style).

8. Other circuits to address this question include the Third Circuit—*e.g., Mintze v. Am. Gen. Fin. Servs. (In re Mintze)*, 434 F.3d 222 (3d Cir.2006)—the Fourth Circuit—*e.g., Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co. L.L.C.)*, 403 F.3d 164 (4th Cir. 2005)—the Fifth Circuit—*e.g., Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir.1997)—and the Ninth Circuit—*e.g., Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011 (9th Cir.2012).

9. "In *McMahon*, the United States Supreme Court promulgated a three factor test in order to determine Congress' intent: '(1) the text of the statute; (2) its legislative history; and (3) whether "an inherent conflict between arbitration and the underlying purposes [of the statute]" exists.' " *In re Elec. Mach. Enters.,*

third factor of the *McMahon* test and examine whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code."). The Eleventh Circuit, joining other courts to address the question, began this analysis by examining whether the matter is core or non-core. *Id.* ("Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings."). Determining that the matter is non-core weighs in favor of compelling arbitration.[10] But, "even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 796.[11]

## II. Application of Law.

A. *The Court has discretion not to enforce the arbitration agreement.*

(1) *The claims are core.*

The Bankruptcy Code provides a non-exclusive list of core proceedings. *See*

---

*Inc.,* 479 F.3d at 795–96. The court found that factors one and two did not support a finding that the FAA was entirely inapplicable to matters arising in the bankruptcy process. *Id.* at 796 ("[W]e find no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code.").

10. In some places, the *Whiting–Turner* opinion indicates that courts are without discretion to decline to compel arbitration of all non-core matters. *In re Elec. Mach. Enters., Inc.,* 479 F.3d at 798 ("[B]ecause [the debtor's] claim against [the creditor] is only related to [the debtor's] bankruptcy [within the meaning of 28 U.S.C. § 157(c)], it is non-core and subject to arbitration."). On the other hand, the opinion contains indications that a bankruptcy court might have discretion not to compel arbitration of a non-core matter in some cases. *Id.* at 796 ("*In general,* bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." (emphasis added)). The court also tempered the importance of the core/non-core distinction by alternatively holding that the bankruptcy court was without discretion to decline arbitration *even if* the lower courts had correctly determined that the matter was core. *Id.* at 798–99. Accordingly, the court's holdings in *Whiting–Turner* do not clearly demonstrate the role of the core/non-core distinction.

Further, the court's reasoning, while firmly establishing the core/non-core distinction, does not elucidate the nature of this distinction's relationship to the finding of inherent conflict required by *McMahon*. Indeed, the opinion passes over the most obvious connection—that Congress's careful guarding of the bankruptcy court's centralizing jurisdiction over core matters (e.g., by enacting 28 U.S.C. § 157 in the wake of *Northern Pipeline Construction Company v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)) evinces some intent to preclude arbitration in core matters. *Id.* at 796 ("[W]hether or not the bankruptcy court has jurisdiction, even exclusive jurisdiction, over a matter is a separate question from whether enforcing a valid arbitration agreement would pose an inherent conflict with the underlying purposes of the Bankruptcy Code.... [A] finding of jurisdiction does not in itself demonstrate that the FAA inherently conflicts with the Bankruptcy Code.... [E]ven if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code.").

11. Notably, the court did not adopt (or address) any additional limitation that "the proceeding derives exclusively from the provisions of the Bankruptcy Code," *see Matter of Nat'l Gypsum Co.,* 118 F.3d at 1067 (5th Cir. 1997), or that the proceeding at least asserts some rights stemming from the Bankruptcy Code, *In re Mintze,* 434 F.3d at 231–32 (3d Cir.2006) ("With no bankruptcy issue to be decided by the Bankruptcy Court, we cannot find an inherent conflict between arbitration of [debtor's] federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code.").

28 U.S.C. § 157(b)(2)(A)-(P).... [S]ince the list is non-exhaustive, we must inquire as to the nature of a core versus a non-core proceeding. In *In re Toledo*, we stated that " '[i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding.' " *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir.1999) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)). A proceeding is also considered core " '[i]f the proceeding is one that would arise only in bankruptcy.' " *Id.* A proceeding is not core " '[if] the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy.' " *Id.*

*In re Elec. Mach. Enters., Inc.*, 479 F.3d at 797.

GTR's pleadings reflect starkly inconsistent positions as to whether this action is primarily for conversion (a state law right), or for the violation of the automatic stay (a right arising under the Bankruptcy Code). As noted above, GTR, in addressing the Debtor's Motion to Remand, argued that the Debtor's claim was primarily one for violation of the automatic stay, stating that "[t]he only reason why a claim exists at all is because of the bankruptcy stay." Now, in a stunning about-face, GTR joins GFC in arguing that the Complaint should be read as asserting state law claims only. GTR was right the first time, and it should

be cautious about taking such contradictory positions in the same action.

■ As admitted by the Defendants, any rights arising from a violation of the automatic stay are substantive rights created by the Bankruptcy Code and are thus quintessentially core matters. *Banks v. Kam's Auto Sales (In re Banks)*, 521 B.R. 417, 420 (Bankr.M.D.Ga.2014); *see also, e.g., MBNA Am. Bank v. Hill*, 436 F.3d 104 (2nd Cir.2006) (holding that § 362(k) claims are core); *Fortune & Faal v. Zumbrun (In re Zumbrun)*, 88 B.R. 250, 253 (9th Cir. BAP 1988) ("[I]t is recognized that such a proceeding is a core proceeding because the automatic stay is a 'creature peculiar to federal bankruptcy law' and it 'plays a fundamental role in the administration of the Bankruptcy Code.' " (citations omitted)); *Carabetta Enters., Inc. v. City of Asbury Park (In re Carabetta Enters., Inc.)*, 162 B.R. 399, 404 (Bankr.D.Conn.1993) ("Actions to enjoin or prosecute violations of the automatic stay, or to determine the applicability of the automatic stay, are core proceedings.").

The District Court, after briefing, denied the Motion to Remand, necessarily concluding that the Complaint alleged a violation of the automatic stay and, thereafter, referred this case to this Court because "[t]he complaint asserts a claim for damages because of a violation of the automatic stay imposed by filing for bankruptcy."[12] Against this damning procedural history, the Defendants still maintain arguments that the claims asserted by the

---

**12.** *Cf. Brady–Morris v. Schilling (In re Kenneth Allen Knight Tr.)*, 303 F.3d 671, 676 (6th Cir.2002) (implicit ruling sufficient to apply law of case). The District Court did not specifically address the state law claims, as it was unnecessary to do so. Even non-core claims are referred to this Court for hearing. *See* 28 U.S.C. § 157(c); *see also* M.D. Ga. General Order 1982–01, *amended by* M.D. Ga. General Order 2012–01. However, the state

law claims, as asserted, stand or fall based on the application of the automatic stay, and are accordingly core proceedings referred to this Court for final determination under 28 U.S.C. § 157(b). *See* 28 U.S.C. § 157(b) (core proceedings include those that arise under title 11 or arise in a case under title 11); *see also* M.D. Ga. General Order 1982–01, *amended by* M.D. Ga. General Order 2012–01.

Complaint are non-core.[13] Their arguments lack merit.

The Defendants argue that the decision of the Debtor to initiate this action in the Georgia Superior Court rather than the bankruptcy court indicates that the Debtor's mental focus was on state law claims. This assertion is meritless. Regardless of the Debtor's mental state when he filed his Complaint, the Complaint clearly asserts a violation of the automatic stay. The Court does not accept any implication by the Defendants that the Debtor is somehow estopped from asserting such a claim simply because of his (perhaps ill-judged) choice of forum.[14]

Second, the Defendants (once more overlooking the District Court's determination to the contrary) attempt to rid the Complaint of the troublesome stay violation claim by classifying the violation as merely "technical." While the Defendants may be correct in asserting that some courts do not award damages for technical stay violations, the stay violation as asserted in the Complaint was not merely technical. The Complaint contains allegations of a violation of the stay that was both willful (i.e., with knowledge of the stay) and that caused actual damages.[15] The Defendants are correct that all damages must be proven, but the Court fails to see how this point bears on the Court's determination here, as the Defendants have not shown how a recovery under the state law claims *differs* from what can be recovered in vindication of the stay.

■ More importantly, however, the Defendants' argument must fail because it appears that the *only* way to maintain a colorable cause of action under the Complaint requires an invocation of the automatic stay. Liberally construed, the Complaint sets forth two theories under Georgia law—a common law cause of action for conversion, and a statutory action for trespass to personalty under O.C.G.A. § 51–10–3.[16] The theories run concurrently but are "not entirely coextensive." *Md. Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 260, 356 S.E.2d 877, 879 (1987) (citations omitted). An action for conversion redresses wrongful interference with rights in property, while an action for trespass redresses unlawful abuse or injury to the property itself. *Id.* Nonetheless, these causes of action share in common that the

---

13. The Court need not decide whether parties are bound by the District Court's determination, because the Court could not, on these facts, reach a conclusion different from that reached by the District Court.

14. The Debtor, in relation to his Motion to Remand, argued that the Complaint raised only state law claims. (It appears that the Debtor's assertions regarding the Motion to Remand may have been guided by Debtor's counsel's aversion to litigating in federal court rather than a substantive reason.) However, the District Court rejected this argument and referred the matter to this Court. It would be nonsensical to estop the Debtor from pursuing the very claim referred to this Court by the District Court. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*

§ 2738 n.39 (2d ed.) ("Absent success in the prior action, the integrity of the court is not threatened by the inconsistency.") (citing cases).

GTR, on the other hand, is a prime candidate for judicial estoppel, as it prevailed in the District Court based on the very arguments that it now attacks. 21B Wright, Miller & Cooper, *supra*, § 2738 & nn.25–29.

15. The Complaint's allegations of damage to the Vehicle and the loss of the personalty inside, if proven, would be recoverable as actual damages. *See, e.g., Matter of Sielaff*, 164 B.R. 560, 570 (Bankr.W.D.Mich.1994).

16. The Complaint is quite vague (*see* note 4, *supra* ), and none of the parties have elucidated on this point.

act must be in some way wrongful, unlawful, or inconsistent with the rights of the Debtor. *Id.*

The only reason offered in the Complaint as to why the Defendants' alleged repossession could be wrongful, unlawful, or inconsistent with the rights of the Debtor is that the repossession was inconsistent with the Debtor's rights under the automatic stay imposed by § 362, not that the Debtor was current on his loan to GFC. *Cf. Ogletree v. Brokers S., Inc.,* 192 Ga.App. 53, 54, 383 S.E.2d 900,.901 (1989) (no cause of action for conversion where lender repossessed vehicle pursuant to security agreement after admitted loan default). Accordingly, the Court cannot see (indeed none of the parties have even attempted to articulate) how the Debtor can maintain these claims without invoking § 362.[17]

Accordingly, because the Debtor's claims hinge on the adjudication of a right created by federal bankruptcy law and could have only arisen in the context of his bankruptcy case, the allegations in the Complaint are core. *Cf. Elec. Mach. Enters., Inc. v. Hunt Constr. Grp., Inc. (In re Elec. Mach. Enters., Inc.),* 416 B.R. 801, 867 (Bankr.M.D.Fla.2009) ("The determination of a motion for sanctions for violation of the automatic stay is a core proceeding arising in the bankruptcy case, and moreover is a matter over which this Court should be exercising jurisdiction. As this determination is inextricably intertwined with all other claims in this proceeding, it is appropriate and expeditious to treat the whole proceeding as a core proceeding." (citations omitted)), *aff'd in part sub nom. In re Elec. Mach. Enters., Inc.,* 474 B.R. 778 (M.D.Fla.2012).

(2) *Enforcing arbitration of the Debtor's claims inherently conflicts with the underlying purposes of the Bankruptcy Code.*

The Court, having determined that the matters before the Court are core, must determine whether enforcing the arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code. For the reasons that follow, the Court concludes that Congress intended to limit or prohibit a Chapter 13 debtor's ability to waive a judicial forum for a violation of the automatic stay, and that compelling arbitration here would inherently conflict with Congress's purpose in enacting § 362 of the Bankruptcy Code.

■ "The automatic stay and entitlement to remedies for its violation ... create the foundation of debtor protection to be provided through the offices of the specialized bankruptcy court." *Merrill v. MBNA Am. Bank (In re Merrill),* 343 B.R. 1, 9 (Bankr.D.Me.2006).

(i) *Importance of the stay in the bankruptcy process, generally.*

One of the chief goals of Congress in passing the Bankruptcy Act of 1978 was to correct "the inadequacy of relief that the bankruptcy act provide[d] for consumer debtors." H.R. Rep. No. 95–595, at 4 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 5966, 1977 WL 9628. "[W]hether the debtor uses Chapter 7, liquidation, or Chapter 13, adjustment of debts of an individual, bankruptcy relief should be effective, and should provide the debtor with a fresh start." *Id.* at 118, *reprinted in* 1978 U.S.C.C.A.N. at 6078–79; *see also Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). In exchange for this fresh

---

17. The Court does not intend to suggest that a violation of the automatic stay can be used to support the state law conversion and trespass claims. It is enough to say that no party in this action has asserted any *other* way that the Debtor can maintain these claims.

start, creditors receive payment on their claims by an orderly distribution of assets, whether by liquidation, reorganization, or rehabilitation.[18] The automatic stay, by immediately providing the debtor relief and protecting the estate from being looted by creditors, is central to both of these purposes.[19]

(ii) *Importance of the stay in Chapter 13 cases, particularly.*

In the context of a Chapter 13 reorganization, the debtor needs "*court supervi-*

*sion and protection,* to develop and perform under a plan for the repayment of his debts over an extended period." H.R.Rep. No. 95–595, at 118, *reprinted in* 1978 U.S.C.C.A.N. at 6079 (emphasis added). "This protection relieves the debtor from indirect and direct pressures from creditors, and enables him to support himself and his dependents while repaying his creditors at the same time." *Id.* Congress has tasked *this Court* with administering the protections of the automatic stay.

---

**18.** 1 *Collier on Bankruptcy* ¶ 1.01[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.); *see also Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) ("One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." (citations omitted)); H.R.Rep. No. 95–595, at 118, *reprinted in* 1978 U.S.C.C.A.N. at 6079 ("The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period.... The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.").

**19.** Congress, in passing the Bankruptcy Code, made this abundantly clear:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. The automatic stay also provides creditor

protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 95–595, at 340, *reprinted in* 1978 U.S.C.C.A.N. at 6296–97. Congress also stated:

> The stay is the first part of bankruptcy relief, for it gives the debtor a respite from the forces that led him to bankruptcy. Frequently, a consumer debtor is severely harassed by his creditors when he falls behind in payments on loans. The harassment takes the form of abusive phone calls at all hours, including at work, threats of court action, attacks on the debtor's reputation, and so on. The automatic stay at the commencement of the case takes the pressure off the debtor. Once the debtor has commenced the case, all creditors' rights against the debtor become rights against the estate. Creditors must seek satisfaction of their claims from the estate. The automatic stay recognizes this by preventing creditors from pursuing the debtor.

*Id.* at 125–26, *reprinted in* 1978 U.S.C.C.A.N. at 6086–87.

*See also Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 676 n. 9 (11th Cir.1984); *Rushing v. Green Tree Servicing, LLC (Rushing),* 443 B.R. 85, 97 (Bankr.E.D.Tex.2010) (citing cases from Fifth Circuit); *In re Merrill,* 343 B.R. at 9 (citing cases from First Circuit).

(iii) *Adjudication of stay violations, while perhaps implicating a fringe of FAA policy, is at the core of the policy underlying the Bankruptcy Code.*

The likelihood of tension between the FAA and the Bankruptcy Code lies in the heavily procedural nature of both statutes. *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. 3346 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.");[20] H.R.Rep. No. 95–595, at 10, *reprinted in* 1978 U.S.C.C.A.N. at 5971 ("Bankruptcy is mainly a procedural advice, prescribing the method of accomplishing rehabilitation or liquidation, but generally leaving undisturbed legal relationships that existed before bankruptcy."). In evaluating a tension between the procedures established by these two bodies of law, courts must be careful not to use a broad brush favoring arbitration to paint over the intricate bankruptcy process crafted by Congress. To require arbitration in the stay violation context does just that.

▄▄▄▄▄ The automatic stay serves a multiplicity of interests. "[A] stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed." *Rushing v. Green Tree Servicing, LLC (In re Rushing)*, 443 B.R. 85, 97–98 (Bankr. E.D.Tex.2010). On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582, 80 S.Ct. 1347. The FAA was designed to put arbitration provisions on equal footing with other contractual provisions. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("[The FAA] places arbitration agreements on equal footing with all other contracts . . . ."); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Because the bankruptcy system implicates interests far broader than the private rights of the two parties to the contract in question, it is not unusual for prepetition contractual obligations, particularly those dictating forum[21] or waiving the protections of the automatic stay,[22] to be modified or even ignored in a

---

20. Accordingly, though an arbitration agreement entails substantive rights, those substantive rights merely prescribe a forum for the determination of other (non-FAA-related) rights.

21. *See, e.g., Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35, 39 (Bankr.S.D.N.Y.1990) ("[E]nforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending."); *Wheeling–Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc. (In re Wheeling–Pittsburgh Steel Corp.)*, 108 B.R. 82, 85 (Bankr.W.D.Pa.1989) ("Public policy and inconvenience require us to deny enforcement of Blue Cross's forum selection clause."); *Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.*, 17 B.R. 134 (Bankr.

S.D.Tex.1981) ("It would be contrary to the theme of the Bankruptcy Reform Act to permit parties by agreement to defeat the jurisdiction of the court. . . . [C]ircumstances could exist under which the bankruptcy court will enforce such a clause and abstain from hearing a case, but not here."); *see also Ellwood City Iron & Wire Co. v. Flakt, Inc. (In re Ellwood City Iron & Wire Co.)*, 59 B.R. 53, 55 (Bankr.W.D.Pa.1986) (recognizing heightened importance of bankruptcy forum after passage of Bankruptcy Amendments and Federal Judgeship Act of 1984).

22. *See, e.g., Matter of Pease*, 195 B.R. 431, 435 (Bankr.D.Neb.1996) ("[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable.")

bankruptcy case. Accordingly, to require arbitration of a stay violation does not serve the core purpose of the FAA and runs roughshod over the considerations that influence bankruptcy courts not to enforce similar prepetition contractual provisions.

(iv) *The bankruptcy court must have discretion to adjudicate a stay violation in protection of its own dignity and jurisdiction.*

The automatic stay, though codified under § 362, represents one of the most fundamental tenets of bankruptcy law—"the bankruptcy court, as a court of equity exercising *in rem* jurisdiction over assets in its custody and control, can protect its jurisdiction by injunction, whether or not such power is expressly set forth in the bankruptcy statute in force." 3 *Collier on Bankruptcy* ¶ 362.LH[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (citing *Ex parte Christy*, 44 U.S. (3 How.) 292, 11 L.Ed. 603 (1845)). The Eleventh Circuit recently recognized this principle:

> Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its *in rem* functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions.

Although these kinds of actions "may resemble money damage lawsuits in *form*, it is their *function* that is critical, and their *function* is to facilitate the *in rem* proceedings that form the foundation of bankruptcy." *Fla. Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1313 (11th Cir.2007), *withdrawn pursuant to settlement*, No. 06–11655–11, 2007 WL 6813797 (11th Cir. June 26, 2007) (unpublished); *see also Ga. Dep't of Revenue v. Burke (In re Burke)*, 146 F.3d 1313, 1319 (11th Cir.1998) (characterizing the debtors' action brought before the discharge for damages caused by violations of the automatic stay as an action to enforce the automatic stay).

As a result, ... contempt motions alleging that a creditor has violated the automatic stay *generally* qualify as "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006).

*Fla. Dep't of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1085–86 (11th Cir.2011) (citation format revised for style).[23] Further, a stay violation regarding estate property (such as alleged here) falls within the exclusive jurisdiction over estate property granted by Congress in 28 U.S.C.

---

**23.** The Second Circuit, which compelled arbitration of a stay violation in *MBNA America Bank v. Hill*, placed great weight on the proposition that the bankruptcy court does not have jurisdiction over a stay violation exclusive of the district court. 436 F.3d at 110 ("Congress has authorized the litigation of automatic stay claims in district courts as well as in the bankruptcy court presiding over the debtor's bankruptcy estate, so this is not a matter within the exclusive jurisdiction of the bankruptcy courts."). The Court fails to see the merit of this argument; indeed, none of the bankruptcy court's jurisdiction is original or exclusive of the referent court, but instead rests upon referral from the district court pursuant to 28 U.S.C. § 157. *Justice Cometh, Ltd,* 426 F.3d at 1343. The Second Circuit's statement also appears inconsistent with its own precedent (which is, incidentally, not the law in the Eleventh Circuit). *See Justice Cometh, Ltd.,* 426 F.3d at 1343 n. 2 (disagreeing with Second Circuit's statement that, "[A] federal claim under 11 U.S.C. § 362[k] ... *must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases."); *see also E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 121 (2d Cir.2001).

692

§ 1334(e)[24] to the district in which the debtor's case is pending.[25] To strip a court in that district of discretion to adjudicate such a stay violation accordingly undermines 28 U.S.C. § 1334(e).

Beyond undermining the court's jurisdiction, a violation of the automatic stay constitutes contempt of the court. *Grant v. Cole (In re Grant)*, 281 B.R. 721, 725 (Bankr.S.D.Ala.2000) (denying motion to compel arbitration of stay violation because violation was contempt of court).[26] These contempt powers are fundamental to protecting the dignity of the bankruptcy court.[27] *Cline v. First Nationwide Mortg. Corp. (In re Cline)*, 282 B.R.

686, 695 (W.D.Wash.2002) ("To say that the automatic stay is not an individually crafted order and that, therefore, violation claims need not necessarily be brought in the court where the violation occurred ignores the meaning of a 'case' and a 'proceeding' and the vested interest a court has in punishing those who disobey its orders."); *In re Grant*, 281 B.R. at 725 (noting that requiring arbitration of such a matter would diminish the power and authority of the court). Courts can (indeed some cases state that courts *must*) address stay violations sua sponte. *Elder–Beerman Stores Corp. v. Thomasville Furniture Indus. (In re Elder–Beerman Stores Corp.)*, 195 B.R. 1019, 1023 (Bankr.

**24.** "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction ... of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.... " 28 U.S.C. § 1334(e)(1).

**25.** *Williams v. Sears Roebuck, Co. (In re Williams)*, 244 B.R. 858, 866 (S.D.Ga.2000), *aff'd*, 34 Fed.Appx. 967 (11th Cir.2002) ("Indeed, § 1334(e) also explains why an individual debtor who has commenced a bankruptcy case in one district cannot seek damages against a party for violation of the automatic stay under § 362[k] from another district court."); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28, 31 (N.D.Ga.1998) (dismissing § 362(k) claim because not brought in the district with jurisdiction over the case); *Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. (In re Lykes Bros. S.S. Co., Inc.)*, 207 B.R. 282, 287 (Bankr.M.D.Fla.1997).

**26.** Some courts appear to have lost sight of this concept simply because the stay is now codified. *E.g., Hill*, 436 F.3d at 110 ("[W]e are not persuaded that a stay, which arises by operation of statutory law and not by any affirmative order of the bankruptcy court, is so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions.").

However, in the Eleventh Circuit, it is well-settled that the Bankruptcy Court can impose contempt sanctions on a violator of the automatic stay as it could for the violation of any of its orders. *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1546 (11th Cir.1996) ("We have characterized the automatic stay of 11 U.S.C. § 362(a) as 'essentially a court-ordered injunction, [and] any person or entity who violates the stay may be found in contempt of court.' " (quoting *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir.1992))). Although, as *Jove* later states, the stay has some aspects that are dissimilar from other court orders, these differences do not implicate the fundamental aspect of similarity in view here—the protection of the dignity and jurisdiction of the court. *See In re Rushing*, 443 B.R. at 85 (recognizing statutory nature of stay, but concluding that court still has interest in ensuring compliance).

**27.** H.R.Rep. No. 95–595, at 10, *reprinted in* 1978 U.S.C.C.A.N. at 5971–73 ("There is inadequate authority on the part of the bankruptcy judges in the contempt area. If there is major, serious contempt that involves something more and requiring something more than a fine of $250, it has got to be transferred and certified to a district judge. We feel that is totally inappropriate and tends to weaken the respect that litigants and lawyers should entertain for the bankruptcy court.... The automatic stay is one of the most important protections provided by the bankruptcy laws. Nevertheless, the bankruptcy courts must have the power to enjoin actions not covered by the automatic stay, in order that the bankruptcy case may proceed unembarrassed by multiple litigation.").

S.D.Ohio 1996) (collecting cases); *222 Liberty Assocs. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assocs.)*, 110 B.R. 196, 200 (Bankr.E.D.Pa.1990) (collecting cases and indicating the court must raise stay violations sua sponte). It makes no sense to say that a stay violation, which undermines the jurisdiction and dignity of the court and is punishable sua sponte by contempt, must be sent to an arbitrator for adjudication.

*(v) The bankruptcy court is specially equipped to address stay violations; arbitrators are not.*

The bankruptcy court is a specialized court that has the knowledge and incentive to protect the bankruptcy system. H.R.Rep. No. 95–595, at 20, *reprinted in* 1978 U.S.C.C.A.N. at 5980 ("In bankruptcy, specialization is necessary to the functioning of the system.").[28] Congress has set up the bankruptcy system in a manner that ensures that core matters, which "typically involve matters in which the interests of the federal bankruptcy system are most critical," such as the automatic stay, are generally determined by the special-ized bankruptcy court rather than a generalist forum.[29] *See Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 542 B.R. 121, 137 (Bankr.S.D.N.Y.2015) (quoted material). In doing so, Congress recognized the bankruptcy court's experience,[30] and, more importantly, vested interest,[31] in ruling in a manner that makes the bankruptcy system functional.

As *Whiting–Turner* indicates, not all core matters implicate these concerns equally. However, these considerations are nonetheless important, and when placed on a scale, determinations regarding the automatic stay implicate them heavily. *In re Merrill*, 343 B.R. at 9 n. 10 ("[A]pplying and enforcing the stay (and related provisions) is [not] a simple exercise where a bankruptcy judge's experience and training are not required."); *see also In re Cline*, 282 B.R. at 695 (recognizing each individual bankruptcy court's unique interest in interpreting and enforcing stay in pending cases); *In re Rushing*, 443 B.R. at 97 ("A bankruptcy court has a unique and compelling interest in insuring obedience to the restrictions imposed by

---

**28.** While Congress has had to rework the jurisdictional framework to address constitutional concerns since the passage of the Bankruptcy Code, these revisions have consistently demonstrated that "Congress intended and gave to bankruptcy courts broad jurisdictional authority, consistent with [constitutional limitations], to adjudicate all matters demonstrated to affect the liquidation of assets or the debtor-creditor relationship." *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 909 (Bankr.E.D.Mich.1985).

**29.** *See* 11 U.S.C. § 157. *Cf. In re White Mountain Mining Co.*, 403 F.3d at 169 ("There is the counter argument, however, that the statutory text [of 28 U.S.C. § 157] giving bankruptcy courts core-issue jurisdiction reveals a congressional intent to choose those courts in exclusive preference to all other adjudicative bodies, including boards of arbitration, to decide core claims.").

**30.** H.R.Rep. No. 95–595, at 20, *reprinted in* 1978 U.S.C.C.A.N. at 5980 ("The reason that the bankruptcy court system works as well as it does today is because the trial judges are specialists, experienced in handling the problems that arise. They are experienced because they handle exclusively bankruptcy cases.").

**31.** H.R.Rep. No. 95–595, at 4, *reprinted in* 1978 U.S.C.C.A.N. at 5965 (explaining that the Code was designed to prevent the bankruptcy process from having to "operate under the supervision of an unconcerned district court"); *Id.* at 14–15, *reprinted in* 1978 U.S.C.C.A.N. at 5975–76 (describing reasons why disputes arising in bankruptcy administration should be addressed by bankruptcy court, not district court).

the automatic stay."). Bankruptcy courts deal with stay violations on a regular basis and have the opportunity to observe patterns by creditors within an industry. In ruling, the bankruptcy court, though obviously mindful of the particular case, has the good of the entire system in view. *In re Rushing*, 443 B.R. at 98 ("Punishment [of a stay violation] is necessary not just to compensate a party, but to insure future compliance with the judicial system." (quoting *In re Grant*, 281 B.R. at 725)); *In re Merrill*, 343 B.R. at 9 ("[O]rdering arbitration of [the debtor's] stay violation claim would conflict with this court's duty to safeguard the automatic stay's fundamental protection for debtors."). This kind of perspective cannot be expected from an arbitrator. *In re Grant*, 281 B.R. at 725 ("Allowing arbitration of alleged violations of court authority would leave nonjudicial third parties to punish abuse of the judicial system.").

■ All of these considerations demonstrate that the purposes of the FAA and the Bankruptcy Code are best served by allowing the bankruptcy court to exercise discretion over whether arbitration of a stay violation should be compelled. The Court is not alone in reaching this determination. *See, e.g., In re Rushing*, 443 B.R. at 98; *In re Merrill*, 343 B.R. at 9; *In re Cole*, 281 B.R. at 724–25.

B.  *The Court exercises its discretion to deny the Motions to Compel Arbitration.*

■ Here, the Complaint alleges that GFC was listed as a creditor in the Debtor's bankruptcy case (and accordingly received notice of the case and the automatic stay). The Complaint also alleges that GTR, upon arriving at the Debtor's residence to repossess the Vehicle, was directly informed of the pending bankruptcy proceeding. Despite these warnings, the Defendants allegedly repossessed the Debtor's Vehicle, dispossessing the Debtor of his Vehicle for an unstated period.[32] An individual-debtor's loss of his car could mean the loss of his job and the stymying of his Chapter 13 rehabilitation. If the allegations in the Complaint are proven true, this case presents a flagrant stay violation and a disregard for the authority of this Court that threatens to undermine the bankruptcy system chiefly entrusted by Congress to this Court.

The Defendants correctly note that the Debtor's case has been converted to Chapter 7[33] and that the case would be closed but for this action. However, the alleged stay violation occurred, this action was brought, and the Motions to Compel Arbitration were filed while the Debtor's case was still pending under Chapter 13. These are the more important dates to consider.

In summary, the Court has a strong interest in adjudicating this stay violation so that it can protect its own ability to supervise and protect debtors in future Chapter 13 cases filed in this district. This Court, being familiar with the bankruptcy practice in this district, considers it necessary to ensure that this alleged violation is resolved in a manner that provides certainty to this Debtor and other debtors, as well as creditors and the public, that the protections offered by automatic stay will

---

**32.** The Debtor's Chapter 13 Plan was confirmed on November 5, 2014 and appears to have provided for payment on the Vehicle. This may indicate that that Vehicle was back in the Debtor's possession by that date.

**33.** The Debtor's Chapter 13 case was converted to Chapter 7 on December 31, 2015.

be enforced in the future in a manner that protects the bankruptcy system. Accordingly, the Court exercises its discretion to deny the Defendants' Motions.

An Order consistent with this Opinion will be entered on even date herewith.